OPINION
{¶ 1} Appellant, Kenneth Alexander, appeals from a Carroll County Common Pleas Court judgment granting permanent custody of his daughter to appellee, the Carroll County Department of Jobs and Family Services.
 {¶ 2} Tia Alexander was born on March 4, 2001, the daughter of appellant and Lorraine Johnson-Dulkoski. On January 11, 2005, appellee filed a complaint alleging that Tia was a neglected and dependent child. The trial court held a shelter care hearing and found that Tia should be removed from her home and placed her in the temporary custody of her adult half-sister, Heather Johnson, with appellee providing protective supervision.
 {¶ 3} At a pre-trial hearing, appellant waived his right to counsel and entered an admission to the dependency count of the complaint. The court held an adjudication hearing on March 11, 2005. At this hearing, appellee dismissed the neglect count of the complaint. Appellant, this time represented by counsel, and Lorraine both entered pleas of "true" to the allegation of dependency. The court then found Tia to be a dependent child.
 {¶ 4} At the disposition hearing, held the same day, the court ordered that Tia be placed in Lorraine's care under appellee's protective supervision and adopted a case plan for Lorraine.
 {¶ 5} On September 28, 2005, appellee filed a motion for alternate disposition requesting that the court grant it temporary custody of Tia. It alleged that Lorraine had failed to comply with the case plan and had inadequate housing. The court held a shelter care hearing that day and granted appellee's motion for temporary custody.
 {¶ 6} The court held a hearing on appellee's motion on October 24, 2005. Appellant did not appear. His counsel phoned the court to advise that he had had no contact with appellant. Lorraine did not object to appellee's request for temporary custody. The court ordered that appellee retain temporary custody of Tia, who was now in foster care. It found that although reasonable efforts had been made to return Tia to her mother's care, this could not be accomplished due to Lorraine's failure to continue drug and alcohol counseling and failure to establish a stable home.
 {¶ 7} On March 30, 2006, appellee filed a motion for permanent custody of Tia. The motion alleged that Tia should not be placed with her mother or father and that permanent custody to appellee was in her best interest. As to appellant, the motion asserted that he had been convicted of rape in 2003, but pled to a reduced charge after an appeal. It also asserted that neither appellant nor any paternal relative has had contact with Tia since his original conviction.
 {¶ 8} Prior to the hearing on appellee's motion, Lorraine entered a stipulation to permanent custody surrendering all of her parental rights.
 {¶ 9} The matter then proceeded to a hearing. Appellant waived his right to counsel and proceeded pro se. The court heard testimony from one of appellee's supervisors, Tia's guardian ad litem, and appellant. It found that appellant entered guilty pleas to three counts of gross sexual imposition involving a minor under the age of 13 and is now classified as a "sexually oriented offender." Per his sentence, appellant is to have no contact with any person under age 18 without direct supervision of a responsible adult for the five years of his probation which began on January 6, 2005. The court further found that neither parent could provide Tia with a suitable home and no suitable relative was available to provide for her. It noted that Tia has no emotional bond with either parent. The court found that appellee made every reasonable effort to reunite Tia with her parents but neither parent availed themselves of the opportunity. Finally, it found that Tia's best interest would be served by granting her permanent custody to appellee. Therefore, the court granted appellee's motion for permanent custody and terminated all parental rights.
 {¶ 10} Appellant filed a timely notice of appeal on June 5, 2006. He is proceeding with this appeal pro se.
 {¶ 11} Appellant breaks his brief down into "first assignment of error" and "second assignment of error." However, he does not list what those assignments of error are. He simply makes two arguments to support his position. We will address those two arguments in turn.
 {¶ 12} In his first assignment of error appellant argues that appellee failed to take steps to find a suitable adoptive home for Tia among her paternal relatives, thus failing to comply with R.C. 2151.412(G)(5). He claims that neither he, nor his family, was aware of when Tia was placed into foster care. Instead of placing Tia in foster care, appellant contends that the court should have explored the possibility of placing her with one of her paternal relatives.
 {¶ 13} Appellant alleges that his mother, Tia's paternal grandmother, went to appellee and spoke to Tia's caseworker when Tia was first taken from Lorraine's home. Appellant contends that his mother was advised that Tia was living with her half-sister and his mother was discouraged from visiting with her.
 {¶ 14} A parent's right to raise his or her children is an essential and basic civil right. In re Murray (1990), 52 Ohio St.3d 155, 157,556 N.E.2d 1169, citing Stanley v. Illinois (1972), 405 U.S. 645, 651,92 S.Ct. 1208, 31 L.Ed.2d 551. However, this right is not absolute. In reSims, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, at ¶ 23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. Id.
 {¶ 15} We review a trial court's decision terminating parental rights and responsibilities for an abuse of discretion. Sims, 7th Dist. No. 02-JE-2, at ¶ 36. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 16} A court may grant permanent custody of a child to an agency if it finds by clear and convincing evidence that it is in the child's best interest to grant permanent custody to the agency and that any of the factors in R.C. 2151.414(B)(1) apply. R.C. 2151.414(B)(1). Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368,481 N.E.2d 613.
 {¶ 17} R.C. 2151.414(B)(1) provides in relevant part:
 {¶ 18} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 19} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."
 {¶ 20} Additionally, according to R.C. 2151.353(A)(4), a court may grant permanent custody of a child to a children services agency in certain circumstances, including:
 {¶ 21} "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 22} "* * *
 {¶ 23} "(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child. * * *"
 {¶ 24} While appellant does not contend that the trial court failed to make these required findings, a brief review is appropriate here.
 {¶ 25} The trial court found that it was in Tia's best interest that it grant her permanent custody to appellee. It further found that neither parent was in a position to assume custody of Tia, nor did it appear that either parent would be able to do so in the foreseeable future. The court concluded that Tia could not and should not be placed with appellant in the foreseeable future. The evidence supports the court's determinations.
 {¶ 26} Jennifer Burns, appellee's employee, testified that the last time appellant visited with Tia was in April of 2003. (Tr. 17). She stated that appellant had not, since that time, even called to ask for a visit with Tia. (Tr. 21-22). She further testified that appellant was convicted of three counts of rape but that the convictions were overturned on appeal. (Tr. 18). She stated that appellant was then found guilty of three counts of gross sexual imposition and categorized as a sexually oriented offender. (Tr. 19). Burns stated that the statute that appellant was found guilty of violating was R.C. 2907.05(A)(4). (Tr. 19). This section provides that no person shall have sexual contact with another who is under the age of 13. R.C. 2907.05(A)(4). Additionally, Burns testified that to her knowledge, appellee had not received any child support from appellant despite a child support order being in place. (Tr. 19). Burns opined that there was no reasonable possibility that Tia could be reunited with her father. (Tr. 20). She also opined that Tia needed permanent placement and that permanent placement with appellee was in Tia's best interest. (Tr. 20-21).
 {¶ 27} Kathleen Stoneman, Tia's guardian ad litem, also testified. She stated that the most stable period in Tia's life had been the last seven to eight months during which time she had been in foster care. (Tr. 27). When asked whether it would be in Tia's best interest to be reunitied with appellant, Stoneman replied, "[absolutely not." (Tr. 28). Stoneman based her opinion on the fact that appellant had chosen to have no contact with Tia and was a complete stranger to her. (Tr. 29). Stoneman opined that it was in Tia's best interest for the court to grant permanent custody to appellee. (Tr. 29) .
 {¶ 28} Finally, appellant testified. He stated that he asked the court to place Tia in his mother's custody. (Tr. 34). He also claimed that he paid child support and that he had asked to see Tia. (Tr. 34-35). On cross-examination, appellant admitted that he had not seen Tia since April 2003. (Tr. 36). He also admitted that while he was told not to visit with Tia, he was not told this by Burns or anyone else at appellee's agency. (Tr. 36). He admitted that he had been out of prison for at least a year and during that time had not talked to Burns about visiting Tia. (Tr. 36-37). Finally, appellant stated that the victim in the case in which he pleaded guilty to gross sexual imposition was nine years old at the time. (Tr. 37).
 {¶ 29} The evidence clearly showed that Tia could not and should not be placed with appellant within a reasonable time. And Lorraine voluntarily surrendered all of her parental rights. Furthermore, the evidence demonstrated that it was in Tia's best interest for the court to grant permanent custody to appellee. When considering a child's best interest at a permanent custody hearing, the court shall consider:
 {¶ 30} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 31} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 32} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 33} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 34} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
 {¶ 35} The factors listed in R.C. 2151.414(E)(7) are:
 {¶ 36} "(7) The parent has been convicted of or pleaded guilty to one of the following:
 {¶ 37} "(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code * * *;
 {¶ 38} "(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code * * *;
 {¶ 39} "(c) An offense under division (B)(2) of section 2919.22 of the Revised Code * * *;
 {¶ 40} "(d) An offense under section 2907.02, 2907.03, 2907.04,2907.05, or 2907.06 of the Revised Code * * * and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 {¶ 41} "(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
 {¶ 42} "(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
 {¶ 43} "(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times * * *
 {¶ 44} "(10) The parent has abandoned the child.
 {¶ 45} "(11) The parent has had parental rights involuntarily terminated * * * with respect to a sibling of the child."
 {¶ 46} The evidence revealed the following regarding the best interest factors. Burns testified that Tia gets along well with both her mother and her foster family. (Tr. 19-20). Tia did not express her wishes. Stoneman testified that the most stable period in Tia's life has been the seven to eight months that she has been in foster care. (Tr. 27). Prior to that, the most stable period in Tia's life was when she lived with Lorraine at a treatment facility. (Tr. 27). Both Stoneman and Burns testified that Tia needs a secure placement and that the only way to achieve a secure placement was to grant permanent custody to appellee. (Tr. 20, 30).
 {¶ 47} Furthermore, the evidence revealed that appellant pleaded guilty to and was convicted of three counts of violating R.C. 2907.05(A)(4). This is one of the offenses listed in R.C. 2151.414(E)(7)(d). Specifically, a violation of this section is gross sexual imposition of a child less than 13 years old. And while there was no direct testimony on the subject, appellant's testimony alluded to the fact that the child-victim was Tia's half-sister. (Tr. 34, 37).
 {¶ 48} Given this evidence, the trial court did not abuse its discretion in awarding permanent custody of Tia to appellee.
 {¶ 49} The above analysis is important because appellant now argues that the court erred in granting appellee permanent custody because it failed to comply with R.C. 2151.412(G)(5). However, as just demonstrated, the court followed the proper statutory guidelines and considered the appropriate statutory factors in making its custody determination. There is no requirement that the court consider R.C. 2151.412(G)(5) in determining whether to grant permanent custody of a child to a children's services agency.
 {¶ 50} R.C. 2151.412 deals with case plans for parents and children. R.C. 2151.412(G)(5) provides:
 {¶ 51} "(G) In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities:
 {¶ 52} "* * *
 {¶ 53} "(5) If the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with either, if no suitable member of the child's extended family or suitable nonrelative is available to accept legal custody of the child, and if the agency has a reasonable expectation of placing the child for adoption, the child should be committed to the permanent custody of the public children services agency or private child placing agency."
 {¶ 54} This section clearly deals with the creation and implementation of case plans, not the determination of whether to grant permanent custody of a child to a children's services agency.
 {¶ 55} And even if the court should have considered whether a family member was available to take custody of Tia, neither appellant, nor any of his family members, filed a motion with the court requesting that the court grant them custody. Burns' testimony further shows a lack of interest by Tia's paternal relatives. She testified that, to her knowledge, members of appellant's family did not visit Tia. (Tr. 17). But she later stated that appellant's mother had visited the agency asking to see Tia. (Tr. 22). However, nobody from appellant's family, including appellant, had inquired about Tia since September 2005. (Tr. 22).
 {¶ 56} Because the trial court properly followed the applicable statutes and the evidence supported the court's decision, we will not conclude that the court abused its discretion in granting custody of Tia to appellee. Accordingly, appellant's first assignment of error is without merit.
 {¶ 57} In his second assignment of error appellant asserts that he was not prepared for the September 28, 2005 hearing. He claims that the court informed Attorney Jeffery Jakmides of the hearing, but Attorney Jakmides, who had previously represented him, was not representing him at that time. Therefore, appellant asserts that he never received notice of this hearing. Appellant claims that had he known about the hearing, he could have informed his family members who had expressed interest in taking custody of Tia so they could appear and express their intentions.
 {¶ 58} Firstly, it seems appellant meant to refer to the October 24, 2005 hearing on appellee's motion for alternate disposition. The September 28 hearing was a shelter care hearing, which the court held the same day appellee filed its motion. The judgment entry from the October 24 hearing is where the court noted that Attorney Jakmides telephoned the court to inform it that he had not had contact with appellant. It is also where the court granted appellee's motion for alternate disposition, continued temporary custody of Tia with appellee, and determined that Tia would be placed in foster care since Lorraine failed to continue with her drug and alcohol counseling or to establish a permanent home.
 {¶ 59} Secondly, appellant claims that had he known about the hearing, he could have informed his family members who had expressed interest in taking custody of Tia so they could appear and express their intentions. However, the record of this case does not support appellant's assertion.
 {¶ 60} The court sent a copy of its October 31, 2005 judgment entry to appellant, which reflected that Tia would be placed in foster care. Appellee did not file its motion for permanent custody until March 30, 2006. Never during this time did appellant or any of his family members file a motion with the court requesting custody. Furthermore, appellee sent a copy of its permanent custody motion to appellant. Appellant acknowledged receiving the motion on April 13 or 14. (Tr. 5). The court did not hold a hearing on the motion until May 8, 2006. Thus, appellant had almost a month to inform his family members of the permanent custody hearing and to arrange their appearance to "express their intentions" to care for Tia. However, no family member did so. Finally, at the hearing, Burns testified that neither appellant, nor any of his family members, had contacted appellee about Tia since September 2005. (Tr. 22).
 {¶ 61} Given the lack of interest by appellant and his family members as demonstrated above, even if appellant had received notice of the hearing on appellee's motion for alternate disposition it seems likely that the outcome would be the same. Furthermore, as demonstrated in appellant's first assignment of error, the court followed all of the proper procedures and guidelines in awarding permanent custody of Tia to appellee. Accordingly, appellant's second assignment of error is without merit.
 {¶ 62} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich, J., concurs.
Waite, J., concurs.