[Cite as *In re KC*, 2016-Ohio-3229.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| K.C. | ) | |
| | ) | CASE NO. 15 MO 0016 |
| | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from Court of Common
Pleas, Juvenile Division, of Monroe
County, Ohio
Case No. 2013 DNA 5036

JUDGMENT:    Affirmed.

APPEARANCES:
For Appellee/Monroe County DJFS    Attorney Jamie Riley
Assistant Prosecutor
101 North Main Street, Room 15
Woodsfield, Ohio 43793

For Appellant/Father    Attorney Travis Collins
P.O. Box 271
Cadiz, Ohio 43907

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated:  May 27, 2016

DeGENARO, J.

{¶1} Appellant-Father, Brett Brunner, appeals the September 28, 2015 judgment of the Monroe County Juvenile Court granting the Monroe County Department of Job and Family Services' (the "Agency") motion for permanent custody. On appeal Brunner asserts the Agency failed in its duty to secure a family placement, specifically with the paternal grandmother. Brunner's arguments are meritless. Fundamentally, Brunner does not challenge the termination of his parental rights, and the paternal grandmother did not file a motion for the child to be placed with her. Moreover, there was clear and convincing evidence to support the juvenile court's judgment that it was in the best interests of the child to grant permanent custody to the Agency. Accordingly the judgment of the juvenile court is affirmed.

## Facts and Procedural History

{¶2} K. C. was born on September 11, 2013. The following day the Agency filed a complaint with the Monroe County Juvenile Court alleging that K.C. was an abused and neglected child. The juvenile court entered an ex parte emergency order placing K.C. into the temporary custody of the Agency. On September 16, 2013, the court conducted a shelter care hearing and continued K.C. in the custody of the Agency.

{¶3} In December of 2013, Brunner was confirmed as K.C.'s father by DNA testing. The Agency filed a motion to amend the original complaint to name Brunner as the father, which was granted. On January 21, 2014, an adjudication hearing was held at which time the Agency moved to dismiss count two of the complaint alleging that K.C. was a neglected child. The Agency also moved to amend the complaint to allege K.C. was a dependent child. K.C.'s mother, not a party to the present appeal, entered an admission that K.C. was a dependent child. Father was not present.

{¶4} During January of 2014, Father met with the Agency and agreed to a case plan that required, among other things, that he seek mental health services, drug and alcohol services, and visitations with K.C.

{¶5} On March 4, 2014, the matter was set for a disposition hearing regarding Mother and an adjudication hearing regarding Father. Mother permanently

surrendered her parental rights. Father entered an admission to the amended complaint, agreed to an immediate disposition hearing, and consented to K.C. continuing in the temporary custody of the Agency.

{¶6} A review hearing was held on December 17, 2014. Father was notified and did not appear. The trial court found that Father had not seen the child since July 29, 2014, and had not made progress on his case plan. No other family members appeared at this time expressing an interest in K.C.

{¶7} The Agency filed a motion for permanent custody of K.C, and the first day of testimony was July 22, 2015. At the hearing, Father's attorney moved to disqualify the guardian ad litem based upon a conflict of interest. The court granted this motion, appointed a new GAL, and continued testimony for August 25, 2015.

{¶8} It is uncontested that Father never completed alcohol and drug treatment or follow-up counseling. He did visit with K.C. several times but stopped after July 29, 2014. Further, as of the date of the permanent custody hearing Father had been incarcerated for 130 days and was scheduled for release from the Eastern Ohio Correctional Center in mid-January 2016. Father believed he could complete all of the requirements of his case plan at the EOCC, that he wanted to get custody of K.C. and if he couldn't, he wanted his mother to have custody.

{¶9} Regarding his mother, Loretta Sheppard, the caseworker testified that in December of 2013, she contacted the Agency and expressed her desire to be considered as a relative placement for K.C. Loretta's home study was approved. She had visits with K.C. at the Agency through February and March of 2014 and three, supervised in-home visits with an overnight visitation scheduled for April 3, 2014. However, Loretta called the caseworker the day before the visit and indicated that she no longer wanted to be considered as a relative placement, stating that her husband was sick, that she didn't feel that she could start over raising another child, and that she hoped that her son would take a more active role and gain custody of K.C. Three months later Loretta called the caseworker one week prior to the permanency hearing and informed her that she had clothes for K.C. and that she

wanted to try to adopt K.C. However, Loretta never filed a motion with the juvenile court to be awarded permanent custody.

{¶10} At the hearing, Loretta testified that originally she was prepared to take custody of K.C. but changed her willingness to take the child because the Agency had informed her that Father could not stay in her home while K.C. was placed with her. She noted her husband had cancer in 2011 but it was in remission as of the hearing date; she expressed her willingness to adopt K.C.

{¶11} The juvenile court granted the Agency's motion for permanent custody.

### Standing

{¶12} Father does not argue on appeal that it was error for the juvenile court to terminate his parental rights. His argument is strictly limited to asserting that his mother, Loretta, should be awarded permanent custody. "Generally, a party cannot appeal an alleged violation of another party's rights. However, '[a]n appealing party may complain of an error committed against a nonappealing party when the error is prejudicial to the rights of the appellant.'" *In re Mourey*, 4th Dist. No. 02CA48, 2003-Ohio-1870, ¶ 20 citing *In re Smith*, 77 Ohio App.3d 1, 13, 601 N.E.2d 45 (6th Dist.1991); *In re Hiatt*, 86 Ohio App.3d 716, 721, 621 N.E.2d 1222 (4th Dist.1993). Father does not argue how his rights have been impacted. In fact, he does not challenge the termination of his parental rights.

{¶13} Loretta has never properly made herself a party by filing a motion to intervene or a motion for permanent custody. Pursuant to Juv. R 2(Y) "party" is defined as "a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parent of a child is a child, the parent of that parent, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court." Thus, Loretta is not a party to the proceedings. Further, "grandparents do not have any legal right to have contact with their grandchildren until a court grants them such a right." *In re Schmidt*, 25 Ohio St.3d 331, 336, 496 N.E.2d 952 (1986). Loretta never obtained, through statute, court order, or other means, any legal right to

custody or visitation with the child.

### Duty to Reunite Child with Paternal Grandmother

{¶14} As Father's two assignments of error are interrelated they will be discussed together for ease of analysis. Father asserts respectively:

> The Trial Court improperly held that the Agency does not have a duty to reunite the child with a family member unless the family member is a party to the case.

> The Trial Court abused its discretion by not adequately considering the possibility of placing K.C. with Loretta Sheppard.

{¶15} Before parental rights can be terminated, an agency must prove by clear and convincing evidence that permanent custody is in the best interests of the child and one of the following provisions: "(a) the child cannot be placed with either parent within a reasonable amount of time or should not be placed with either parent, (b) the child is orphaned, (c) the child is abandoned, (d) the child has been in the temporary custody of the agency for twelve or more months of a consecutive twenty-two month period." *In re J.Z.*, 7th Dist. No. 08 CO 31, 2009–Ohio–1937, ¶ 18, citing R.C. 2151.414(B)(1)(a)-(d). "An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination." *In re G.N.*, 170 Ohio App.3d 76, 2007–Ohio–126, 866 N.E.2d 32, ¶ 27 (12th Dist.) citing *In re Starkey*, 150 Ohio App.3d 612, 2002–Ohio–6892, 782 N.E.2d 665, ¶ 16 (7th Dist.).

{¶16} The juvenile court found by clear and convincing evidence that the child had been in the temporary custody of the Agency for twelve or more months of a consecutive twenty-two month period. Father does not dispute this finding and makes no argument to the contrary. As such, the Agency's remaining task was to prove by clear and convincing evidence that permanent custody was in the best interests of the child. R.C. 2151.414.

{¶17} R.C. 2151.414(D) directs the trial court to consider all relevant factors when determining the best interest of the child, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶18} The juvenile court clearly considered the best interest factors as demonstrated in the judgment entry. The court noted the child was just under two years old and too young to express his desire of where and with whom to live, and recognized that the child had only known his foster parents as his mother and father. K.C.'s biological mother had already lost her parental rights, and he had been in the temporary custody of the agency his whole life. Further, the GAL recommended that Father's parental rights be terminated, which he does not challenge on appeal.

{¶19} Father had not been convicted of any crimes of violence or sexual abuse, but was incarcerated as of the trial date until at least January 2016. Prior to that he had been incarcerated from May to July of 2014. Father had long-standing issues with drugs and alcohol. He was required to complete drug and alcohol counseling but was discharged from two programs for non-compliance. The juvenile court noted that Father had only seen the child five or six times in the previous two years and had not provided any support to the child for seven months.

{¶20} The juvenile court acknowledged that the child had been in the custody of the Agency for longer than two years and did not qualify for further temporary custody or a planned permanent living arrangement, and the child needed a legally secure placement which could only be done through permanency.

**{¶21}** Father argues that the juvenile court did not adequately consider placing the minor child with his mother, Loretta. This is not supported by the record. There was ample evidence presented that Loretta was considered for placement. She had participated early in the proceedings stating that she wanted custody. She completed supervised and unsupervised visits. A home study was conducted and approved. However, she later withdrew herself from consideration citing her husband's illness, not wanting to start over again with a small child, and her hope that Father would take a more active role. Not until days prior to the permanency hearing did Loretta express her desire to have custody, but she never filed a motion to either intervene or seek permanent custody.

**{¶22}** Citing *In re Alexander*, 7th Dist. No. 06-CA-834, 2006-Ohio-7083, the juvenile court stated that "DJFS does not have a duty to reunite the child with a family member unless the family member is a party to the case." Father argues that this was an incorrect statement of law. In *Alexander*, Father appealed the termination of his parental rights, arguing that the agency failed to take steps to find a suitable adoptive home among his relatives. *Id.* ¶ 12. We held that R.C. 2151.412 "clearly deals with the creation and implementation of case plans, not the determination of whether to grant permanent custody of a child to a children's services agency." *Id.* ¶ 54. This court in *Alexander* also noted that neither Father, nor any of his relatives, filed a motion requesting the court to give them custody. *Id.* ¶ 55.

**{¶23}** Instead of arguing any statutory or case law to the contrary, Father contends: "Nothing in *Alexander* holds that a children's services agency has no duty to try to reunite a child with a family member unless the family member is a party to the case." Father states that other R.C. sections (specifically R.C. 2151.412 which deals with case plans and R.C. 2151.353 which deals with disposition options for abused, neglected and dependent children) are premised on the notion that it is in the best interests of the child to attempt to reunite a child with a family member. Father fails to recognize that the Agency did attempt to reunite the child with Loretta.

**{¶24}** There was clear and convincing evidence to support the juvenile court's

judgment granting permanent custody to the Agency. Loretta was given proper consideration for placement, but she withdrew her willingness to seek custody of the minor child, and never sought to intervene or file her own motion for permanent custody.  The evidence demonstrated that it was in the child's best interest for the court to grant permanent custody to the Agency. Accordingly, Father's assignments of error are meritless, and the judgment of the trial court is affirmed.

Donofrio, P. J., concurs.

Robb, J., concurs.