**In re G.N.**

[Cite as *In re G.N.,* 170 Ohio App.3d 76, 2007-Ohio-126.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA2006–08–062.

Decided Jan. 16, 2007.

Donald W. White, Clermont County Prosecuting Attorney, and David H. Hoffmann and Thomas Flessa, Assistant Prosecuting Attorneys, for appellee Clermont County Department of Job and Family Services.

William R. Kaufman, for appellant.

Katherine Kelly, for appellee Richard N.

Robert C. Bauer, Guardian ad Litem.

BRESSLER, Judge.

{¶ 1} Appellant, Frances Malicote, appeals the decision of the Clermont County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor children, G.N. and H.N., to the Clermont County Department of Job and Family Services ("CCDJFS").

{¶ 2} On November 13, 2003, CCDJFS filed a complaint alleging that G.N. and H.N. were dependent, after appellant admitted taking the children to a residence where methamphetamine was being manufactured and then keeping the children at that residence overnight. The same day, the juvenile court held a shelter-care hearing and awarded CCDJFS predispositional temporary custody of the children. On November 30, 2003, the juvenile court adjudicated the children dependent and awarded temporary custody to CCDJFS. In addition, a case plan was implemented to reunify both appellant and the children's father, Rick N., with their children. Under the case plan, appellant was required to refrain from abusing drugs and alcohol, complete parent education, maintain stable employment, and maintain a stable residence.

{¶ 3} On October 11, 2004, CCDJFS filed a motion to extend temporary custody. On October 14, 2004, the juvenile court found that appellant had made progress in her case plan for reunification with her children and extended the temporary-custody award to CCDJFS until March 10, 2005. On January 2, 2005, appellant substantially completed her case plan, and the juvenile court terminated the temporary-custody award and returned custody of the children to appellant, subject to protective supervision. On March 10, 2005, the juvenile court dismissed protective supervision.

{¶ 4} However, on August 5, 2005, CCDJFS again filed a motion for predispositional temporary custody after appellant was in an automobile accident and tested positive for marijuana and methamphetamine. The same day, the juvenile court held a shelter-care hearing and awarded CCDJFS predispositional temporary custody of the children. On October 6, 2005, CCDJFS filed a motion seeking permanent custody of the children. On November 2, 2005, appellant filed a motion requesting a rehearing on CCDJFS's August 5, 2005 motion requesting predispositional temporary custody.

{¶ 5} On December 9, 2005, a magistrate held a hearing on CCDJFS's motion for permanent custody and appellant's motion for a rehearing. On March 14, 2006, the magistrate issued his decision with findings of fact and conclusions of law, in which he found that the children have been in the custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22–month period and that it is in the best interest of the children to permanently terminate parental rights and grant permanent custody

to CCDJFS. Appellant filed objections to the magistrate's decision, and the juvenile court affirmed the magistrate's decision in its entirety. Appellant appeals the juvenile court's decision, raising three assignments of error.[1]

{¶ 6} In appellant's first assignment of error, she argues that the magistrate's decision does not satisfy her motion requesting findings of fact and conclusions of law after he denied her motion for a rehearing on CCDJFS's August 5, 2005 motion requesting predispositional temporary custody. Further, appellant maintains that the magistrate's decision on March 14, 2006 does not comply with Civ.R. 52 and 53. We disagree.

{¶ 7} Civ.R. 52 provides:

{¶ 8} "When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ.R. 58, or *not later than seven days after the party filing the request has been given notice of the court's announcement of its decision,* whichever is later, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law." (Emphasis added.)

{¶ 9} Similarly, Civ.R. 53(D)(3)(a)(ii) provides:

{¶ 10} "Subject to the terms of the relevant reference, a magistrate's decision may be general unless findings of fact and conclusions of law are timely requested by a party or otherwise required by law. A request for findings of fact and conclusions of law shall be made before the entry of a magistrate's decision or *within seven days after the filing of a magistrate's decision.* If a request for findings of fact and conclusions of law is timely made, the magistrate may require any or all of the parties to submit proposed findings of fact and conclusions of law." (Emphasis added.)

{¶ 11} While appellant argues that she timely filed a motion requesting findings of fact and conclusions of law following the magistrate's decision denying her motion for a rehearing, the record does not support her contention. The record indicates that the magistrate denied appellant's motion for a rehearing from the bench on December 9, 2005. According to Civ.R. 52 and 53, appellant then had seven days to file a motion requesting findings of fact and conclusions of law. While appellant did file such a motion, she did not do so until December 30, 2005, which is beyond the deadline provided by the rule. Because appellant's motion was not timely filed, it is inconsequential that the magistrate's decision on

---

1. The children's father, Rick N., did not complete his case plan, attend the permanent custody hearing or otherwise respond to CCDJFS's motion for permanent custody, file objections to the magistrate's decision, or appeal the juvenile court's decision granting the motion for permanent custody.

March 14, 2006, did not include findings of fact and conclusions of law to support his previous decision on December 9, 2005. Accordingly, appellant's first assignment of error is overruled.

{¶ 12} In appellant's second assignment of error, she argues that the juvenile court improperly awarded CCDJFS predispositional temporary custody at the August 5, 2005 shelter-care hearing. Appellant maintains that the juvenile court's ruling does not comply with Juv.R. 7 and argues that the court's ruling is against the manifest weight of the evidence. Again, we disagree.

{¶ 13} When a juvenile court makes an initial award of temporary custody during a shelter care hearing, it is guided by Juv.R. 7, which provides:

{¶ 14} "A child taken into custody shall not be placed in detention or shelter care prior to final disposition unless any of the following apply:

{¶ 15} "(1) Detention or shelter care is required:

{¶ 16} "(a) to protect the child from immediate or threatened physical or emotional harm; or

{¶ 17} "(b) to protect the person or property of others from immediate or threatened physical or emotional harm.

{¶ 18} "(2) The child may abscond or be removed from the jurisdiction of the court;

{¶ 19} "(3) The child has no parent, guardian, custodian or other person able to provide supervision and care for the child and return the child to the court when required;

{¶ 20} "(4) An order for placement of the child in detention or shelter care has been made by the court;

{¶ 21} "(5) Confinement is authorized by statute."

{¶ 22} Generally, the purpose of a shelter-care hearing is directed toward the prompt resolution of emergency custody issues, and the juvenile court's primary concern is for the immediate safety and protection of children. *In re Careuthers* (May 2, 2001), Summit App. No. 20272, 2001 WL 458681. A shelter-care decree "is in no sense dispositive; it is interlocutory in nature, limited in scope and purpose, and temporary in duration. It responds to an emergency—the immediate physical needs of the child—until the court can fully inquire into the facts and decide what is best for the child. A shelter care order is no more than this." *In re Moloney* (1986), 24 Ohio St.3d 22, 25, 24 OBR 18, 492 N.E.2d 805.

{¶ 23} Appellant's argument is essentially that the juvenile court's decision granting CCDJFS predispositional temporary custody on August 5, 2005, was against the manifest weight of the evidence. When reviewing the weight of

the evidence, an appellate court applies the same test in civil cases as it does in criminal cases. *Tewarson v. Simon* (2001), 141 Ohio App.3d 103, 115, 750 N.E.2d 176. A trial court's judgment is not against the manifest weight of the evidence if its judgment is supported by some competent, credible evidence going to all the essential elements of the case. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

{¶ 24} Evaluating and assessing evidence are the primary functions of the trier of fact, not an appellate court. *Yuhasz v. Mrdenovich* (1992), 82 Ohio App.3d 490, 492, 612 N.E.2d 763. The trier of fact has the best opportunity to view witnesses, observe their demeanor, gestures, and voice inflections, and, ultimately, determines their credibility. *Seasons Coal Inc., v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273.

{¶ 25} Appellant maintains that at the time of the shelter-care hearing, the children were safely in the custody of her husband, Donald Malicote, and that there was no justification for their removal from his custody under Juv.R. 7. According to the record, appellant had tested positive for marijuana and methamphetamine, and Donald had left the children with Rick N. in violation of the juvenile court's order that he have no unsupervised visitation with the children. Considering the nature of shelter-care hearings, when the primary emphasis is to ensure the safety of the children, we cannot say that the juvenile court's decision is against the manifest weight of the evidence. Appellant's second assignment of error is overruled.

{¶ 26} In appellant's third assignment of error, she argues that the juvenile court erred in granting CCDJFS's motion for permanent custody. We agree.

{¶ 27} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer* (1982), 455 U.S. 745, 759, 102 S.Ct. 1388, 71 L.Ed.2d 599. An appellate court's review of a juvenile court's decision finding clear and convincing evidence is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re Starkey,* 150 Ohio App.3d 612, 2002-Ohio-6892, 782 N.E.2d 665, ¶ 16. A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *In re Rodgers* (2000), 138 Ohio App.3d 510, 520, 741 N.E.2d 901.

{¶ 28} R.C. 2151.414(B) requires the juvenile court to apply a two-part test when terminating parental rights and awarding permanent custody to a children services agency. Specifically, the trial court must find that (1) the grant of permanent custody to the agency is in the best interest of the children, utilizing,

in part, the factors of R.C. 2151.414(D); and, (2) any of the following apply: the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; the child is abandoned; the child is orphaned; or the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22–month period. R.C. 2151.414(B)(1)(a), (b), (c) and (d); *In re Ebenschweiger,* Butler App. No. CA2003–04–080, 2003-Ohio-5990, 2003 WL 22533124, ¶ 9.

{¶ 29} Under R.C. 2151.414(B)(1), when a child has been in temporary custody for at least 12 months of a consecutive 22–month period, a juvenile court is required to find by only clear and convincing evidence that permanent custody is in the child's best interest. *In re L.D.,* Clinton App. No. CA2004–03–007, 2004-Ohio-4000, 2004 WL 1717680, ¶ 14–15. The juvenile court found, and appellant does not dispute, that the children had been in the temporary custody of CCDJFS for more than 12 months of a consecutive 22–month period.

{¶ 30} Accordingly, we must determine whether there was clear and convincing evidence that granting the motion for permanent custody was in the children's best interest. R.C. 2151.414(D) provides that in considering the best interest of a child in a permanent custody hearing, "the court shall consider all relevant factors, including, but not limited to, the following:

{¶ 31} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

{¶ 32} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶ 33} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

{¶ 34} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶ 35} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶ 36} After reviewing the record, we find that the juvenile court erred in granting CCDJFS's motion for permanent custody. While a juvenile court is not required to enumerate and discuss every statutory factor listed in R.C. 2151.414(D) when making a best-interest determination, there must be some

indication in the record that the court at least considered all of the required factors. The juvenile court's decision granting CCDJFS's motion for permanent custody is a loosely organized discussion of its findings without a single citation of a statutory factor. Because the juvenile court's decision is devoid of any reference to the applicable statutes, we must attempt to infer from the court's findings which factors, if any, it considered in granting CCDJFS's motion for permanent custody.

{¶ 37} The juvenile court's decision does indicate that it considered the children's relationship with their mother and their foster caregivers, as required by R.C. 2151.414(D)(1). Specifically, the court found that "[t]he strong bond between [appellant] and her children was verified by nearly every witness at trial." Later in its decision, the court found that "[t]he children's [foster] care givers do not want to adopt them."

{¶ 38} However, there is no indication that the trial court considered the wishes of the children, either expressed by them directly or by their guardian ad litem ("GAL") as required by R.C. 2151.414(D)(2). Although the GAL filed a report, there is no indication in the juvenile court's decision that the court considered the GAL's recommendation.

{¶ 39} The juvenile court properly considered the children's custodial history pursuant to R.C. 2151.414(D)(3). The court found that "[the children] were originally removed from their home on November 12, 2003 * * *. They were adjudicated dependent on November 20, 2003 and temporarily committed to the custody of [CCDJFS]. [CCDJFS] placed them on leave with the mother on November 24, 2004. Custody was returned to [appellant] subject to protective supervision on January 6, 2005. Protective supervision was terminated on March 10, 2005. * * * The children were again removed from [appellant's] custody on August 5, 2005 pursuant to [CCDJFS's] motion. [The children] were placed in the custody of [CCDJFS] by Entry filed on August 5, 2005. * * *. The Motion for Permanent Custody was filed on October 6, 2005."

{¶ 40} Also, it appears that the juvenile court considered R.C. 2151.414(D)(4) in finding that "[t]he children need the kind of legally secure permanent placement that can be achieved by a grant of permanent custody to [CCDJFS]." However, the court's finding does not properly address this statutory factor. The statute does not require a juvenile court to consider whether an agency can provide the type of legally secure permanent placement the children need. Rather, the statute requires a juvenile court to consider whether the children's need for legally secure permanent placement *can be achieved without a grant of* permanent custody to the agency. The difference is that the statute does not require the court to consider whether an agency can provide the necessary legally secure permanent placement, but instead requires the court to

consider whether granting permanent custody is the only way the children's need for such placement can be achieved. Accordingly, the juvenile court's finding with respect to R.C. 2151.414(D)(4) is in error.

{¶ 41} Further, we are unable to discern whether the juvenile court considered R.C. 2151.414(D)(5), which requires the court to consider whether any of the factors in R.C. 2151.414(E)(7) to (11) apply in relation to the parent and children. The court made several findings related to appellant's continued drug-abuse problems, which could indicate that the court considered R.C. 2151.414(E)(9). The factor listed in R.C. 2151.414(E)(9) is whether "[t]he parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times * * *." However, the record indicates that appellant has not refused drug-abuse treatment, but in fact successfully completed drug-abuse treatment pursuant to her case plan.

{¶ 42} As we have discussed, the juvenile court's decision is not sufficiently detailed for this court to determine whether the juvenile court properly considered the statutory factors required to find that granting permanent custody to CCDJFS is in the children's best interest. Accordingly, we reverse the juvenile court's decision granting permanent custody to CCDJFS and remand this cause to the juvenile court to properly consider the requisite statutory factors.

{¶ 43} In doing so, we remind the juvenile court that "a parent's right to the custody of his or her child has been deemed 'paramount.' *In re Perales* (1977), 52 Ohio St.2d 89, 97, 6 O.O.3d 293, 369 N.E.2d 1047. Permanent termination of parental rights has been described as 'the family law equivalent of the death penalty in a criminal case.' * * * Therefore, parents 'must be afforded every procedural and substantive protection the law allows.'" *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680, quoting *In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45. Given the magnitude of a decision to permanently terminate parental rights, a decision granting permanent custody must indicate which statutes apply and which factors it has considered and should reflect the court's careful and thorough analysis in reaching such a decision. Appellant's third assignment of error is sustained.

Judgment affirmed in part
and reversed in part,
and cause remanded.

POWELL, P.J., and WALSH, J., concur.