OPINION
{¶ 1} Appellant-mother, Jamie S., appeals the decision of the Clinton County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor child, A.S., to Clinton County Children Services ("CCCS"). For the reasons set forth below, we affirm the trial court's judgment. *Page 2 
 {¶ 2} A.S. was born May 17, 2003 to appellant and father, Nathan B. Nathan B. has not been actively involved in the child's life since that time, and is not involved in the present appeal. On July 18, 2005, A.S. was removed from the home of his maternal grandmother, where he resided with appellant, after CCCS filed a complaint alleging A.S. was a dependent child. In its complaint, CCCS alleged that appellant employed inappropriate physical discipline with A.S. and resided in a filthy home. Caseworkers found the subject home to be littered with garbage, cockroaches, clothing articles and other items, and emitted a strong odor of human excrement.
 {¶ 3} The court adjudicated A.S. a dependent child on September 1, 2005, and placed him in the temporary custody of CCCS. The court implemented a case plan on that date, requiring appellant to complete parenting classes and demonstrate appropriate parenting techniques, obtain and maintain stable employment, attend and complete anger management classes, and obtain and maintain stable, appropriate, independent housing. The court also granted appellant visitation with A.S.
 {¶ 4} On March 1, 2006, the trial court ordered that A.S. be returned to the temporary custody of appellant, and that CCCS provide protective supervision of the child. At that time, appellant had obtained employment at Wilmington College working in food services, had obtained independent housing, and had allowed CCCS caseworkers into her home to work with her on parenting skills.
 {¶ 5} On June 28, 2006, however, the court ordered that A.S. be returned to the temporary custody of CCCS, finding that appellant had denied CCCS caseworkers access to her home, in contravention of a court order granting CCCS protective supervision of the child. Temporary custody of A.S. thereafter remained with CCCS through January 22, 2007, on which date CCCS moved for permanent custody. The trial court held a hearing on the motion on May 21, 2007, and on June 7, 2007, granted permanent custody of A.S. to CCCS. *Page 3 
 {¶ 6} Appellant timely appealed the trial court's judgment, advancing a single assignment of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT ERRED IN FINDING, BY CLEAR AND CONVINCING EVIDENCE, THAT THE BEST INTERESTS OF THE CHILD, AS DEFINED BY THE FACTORS SET FORTH IN R.C. 2151.414(D), REQUIRED GRANTING PERMANENT CUSTODY TO CLINTON COUNTY CHILDREN SERVICES."
 {¶ 9} In her sole assignment of error, appellant argues the juvenile court erred in granting permanent custody of A.S. to CCCS because the state failed to prove by clear and convincing evidence that such grant of permanent custody was in the child's best interest. Appellant specifically contends the state failed to prove by clear and convincing evidence that A.S.'s need for a legally secure and permanent placement could not be achieved without a grant of permanent custody to CCCS. We disagree.
 {¶ 10} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. Santosky v.Kramer (1982), 455 U.S. 745, 759, 102 S.Ct. 1388. See, also, In reG.N., 170 Ohio App.3d 76, 2007-Ohio-126, ¶ 27. R.C. 2151.414(B) requires a juvenile court to apply a two-part test when terminating parental rights and awarding permanent custody to a children services agency.In re G.N. at ¶ 28.
 {¶ 11} First, pursuant to R.C. 2151.414(B)(1), a juvenile court may grant permanent custody of a child to a children services agency only if the court finds, by clear and convincing evidence, that granting permanent custody to the agency is in the best interest of the child. See In re A.W., Clinton App. No. 2006-10-036, 2007-Ohio-722, ¶ 6. In making this determination, the juvenile court is required to consider all relevant factors, including but not *Page 4 
limited to the factors enumerated in R.C. 2151.414(D). Id.
 {¶ 12} Second, before a juvenile court may grant permanent custody to a children services agency, R.C. 2151.414(B)(1) requires the juvenile court to find, by clear and convincing evidence, that any of the following circumstances applies: the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; the child is abandoned; the child is orphaned; or the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period. R.C. 2151.414(B)(1)(a), (b), (c) and (d);In re A.W. at ¶ 7-11; In re G.N. at ¶ 28; In re Ebenschweiger, Butler App. No. CA2003-04-080, 2003-Ohio-5990, ¶ 9.
 {¶ 13} Here, the juvenile court found by clear and convincing evidence, and appellant does not dispute, that A.S. has been in the temporary custody of CCCS for more than 12 months of a consecutive 22-month period. Accordingly, we must determine whether clear and convincing evidence was presented to support a finding that granting permanent custody to CCCS was in A.S.'s best interest.
 {¶ 14} R.C. 2151.414(D) provides that in considering the best interest of a child in a permanent custody hearing, "the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 15} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 16} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 17} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending *Page 5 
on or after March 18, 1999;
 {¶ 18} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 19} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 20} The Ohio Supreme Court has specifically held that "[t]here is not one element that is given greater weight than the others pursuant to the statute." In re Schaefer, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56.
 {¶ 21} Appellant argues the trial court erred in granting permanent custody of A.S. to CCCS because she has complied with the requirements set forth in her case plan, and has made consistent efforts to be reunited with A.S. Nevertheless, the trial court found that an examination of the factors set forth in R.C. 2151.414(D) demonstrates it is in A.S.'s best interest to be placed in the permanent custody of CCCS.
 {¶ 22} First, in considering R.C. 2151.414(D)(1), the trial court found that appellant's interaction with A.S. during visitations is consistently poor. The record indicates that while appellant has attended all scheduled visitations, she continually becomes involved in power struggles with A.S. during these visits. CCCS caseworker, Katie Adams, testified that while A.S. is being transported to see appellant, he changes his personality from a happy, talkative and compliant child, to a "very defiant and obstinate" child. She described his behavior as "gearing up for a power struggle" when he arrives at the agency for scheduled visitations with appellant, and that he seems to lose his social skills. Adams indicated that once a particular visit is over, A.S. becomes happy, talkative and compliant once again. Nevertheless, Adams indicated that A.S. is excited to see his siblings at scheduled visitations.
 {¶ 23} With respect the appellant's interaction with A.S. during her visits, Adams described such interaction as "the most awful" she has ever witnessed at CCCS "on a *Page 6 
consistent basis," and that there has been no improvement or progress. Adams testified that A.S. hits, kicks, and spits at appellant, and throws toys during their visits. She also indicated that appellant does not provide appropriate discipline when such is needed, and does not get up to prevent A.S. or his siblings, whom she brings to see A.S., from getting hurt when they are engaged in a dangerous activity. Rather, Adams indicated that appellant stays in one place and yells at the children, and rarely comforts or consoles them when they become upset. While Tari Mabry, appellant's parenting mentor, testified that she has observed instances of appropriate interaction between appellant and A.S., she also testified that appellant is inconsistent and unpredictable in addressing A.S.'s behavior and frequent temper tantrums, and in disciplining A.S.
 {¶ 24} Testimony was also presented during the hearing that A.S.'s behavior has progressed significantly while in foster care, and that he has responded well to the consistency provided therein. Again, caseworker Adams indicated A.S. is a "happy, pleasant, engaging child," and responds to discipline when in the care of agency workers.
 {¶ 25} With respect to the second statutory factor, R.C.2151.414(D)(2), the trial court found the wishes of A.S., through his guardian ad litem, Kathy Szelagiewicz, were that permanent custody be granted to CCCS. The record indicates that Szelagiewicz submitted a detailed report concerning this matter, setting forth the child's progress while in foster care, as well as her own concerns regarding appellant's interaction with A.S. during visitations. She further opined that she does not feel appellant is able to provide a clean and safe home for A.S.
 {¶ 26} In considering the custodial history of A.S. pursuant to R.C.2151.414(D)(3), the court noted that A.S. has been in the temporary custody of CCCS from July 18, 2005 to September 1, 2005, on which date he was adjudicated dependent. He thereafter remained in the temporary custody of CCCS until March 1, 2006, when the court ordered that he be *Page 7 
returned to the temporary custody of appellant. On June 28, 2006, however, A.S. was again placed in the temporary custody of CCCS where he has remained continuously since.
 {¶ 27} The court also found, in accordance with R.C. 2151.414(D)(4), that a legally secure and permanent placement of A.S. could only be secured by a grant of permanent custody to CCCS. In making this finding, the court relied upon the testimony and findings of caseworker Adams. The court found that none of the factors set forth in R.C.2151.414(E)(7) to (11) applied to appellant, though it found Section (E)(10) applied where A.S.'s father, Nathan B., has abandoned the child.
 {¶ 28} In concluding its best interest analysis, the court noted additional relevant factors it felt should be considered, including appellant's compliance with the case plan. With respect to the housing requirement, for instance, the court found, and the record demonstrates, that while appellant has been able to maintain independent housing for the past two years, the condition of her home is deplorable. Caseworker Adams testified that the home is in a continually filthy condition, with roach infestation, dirty diapers and garbage strewn about, overflowing trash receptacles, and food remnants on the floor and in the sink. She also noted medications are within the reach of children.
 {¶ 29} In addition, Adams testified that appellant has not been employed since January 2007, as required by the case plan. The record indicates appellant worked in food services at Wilmington College from November 2005 to March 2006, and at Liberty Tax Service for one month in January 2007. Since that time, however, and notwithstanding employment assistance services provided by CCCS, appellant has been unable to secure and maintain employment. As noted by the trial court, appellant has applied for, but has been denied, social security benefits.
 {¶ 30} The record also indicates that while appellant has complied with other requirements of the case plan, such as completing a drug and alcohol program, parenting *Page 8 
courses, and a mental health assessment, appellant continues to experience problems with respect to her parenting of A.S. Adams testified that appellant continues to have "significant gaps in her parenting" today. She indicated appellant is inconsistent in disciplining A.S. and in resolving temper tantrums, and continues to engage in "power struggles" with the child. Other witnesses testified that appellant demonstrated "closed-mindedness" throughout her participation in parenting classes, acting as though she already knew how to properly parent A.S. The court found that CCCS has provided a number of services to appellant, and that such efforts were reasonable to assist appellant in reunifying with A.S.
 {¶ 31} Finally, the court also found significant A.S.'s behavior immediately prior to scheduled visitations with appellant. As stated, Adams testified that A.S. would transform from a happy, talkative and compliant child, into a defiant and obstinate child upon arriving at the agency to visit appellant. Moreover, the court found significant appellant's own mental health status. Appellant's mental health adult therapist, Christina Rivers, testified that appellant is no longer in counseling and that counseling was only minimally beneficial to appellant due to her resistance to counseling, as well as her learning disabilities. She also noted appellant's lack of insight as to why A.S. was not being returned to her.
 {¶ 32} Despite appellant's contention to the contrary, the trial court found, and the record supports, that a legally secure and permanent placement of A.S. cannot be achieved without a grant of permanent custody to CCCS. Appellant continues to experience difficulties in maintaining a clean and safe home, continues to have a volatile relationship with A.S., and continues to experience difficulty in obtaining and maintaining employment.
 {¶ 33} Accordingly, upon a thorough review of the record, we find that competent credible evidence was presented during the permanent custody hearing to support the trial court's finding that a legally secure and permanent placement of A.S. could not be achieved without a grant of permanent custody to CCCS. In addition, our review of the record *Page 9 
indicates the trial court made findings as to each of the applicable statutory factors set forth in R.C. 2151.414(D) and (E), and that such findings are supported by competent credible evidence. We therefore find that clear and convincing evidence supports the trial court's determination that it is in A.S.'s best interest to be permanently placed in the custody of CCCS. Appellant's sole assignment of error is overruled.
 {¶ 34} Judgment affirmed.
 YOUNG, P.J., and WALSH, J., concur. *Page 1