[Cite as *In re J.L.M.*, 2016-Ohio-2773.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | | CASE NOS. CA2015-11-206 |
| J.L.M., et al. | : | CA2015-12-209 |
| | | CA2015-12-210 |
| | : | CA2015-12-211 |
| | : | O P I N I O N |
| | | 5/2/2016 |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. JN2013-0144, JN2013-0145, JN20130147

Jeannine Barbeau, 5268 Jefferson Avenue, Cincinnati, Ohio 45220, guardian ad litem

Jonathan W. Ford, Jamie Landvatter, Steven R. Sharp, Legal Aid Society of Southwest Ohio, LLC, 10 Journal Square, 3rd Floor, Hamilton, Ohio 45011, attorneys for children

Dawn S. Garrett, 9435 Waterstone Blvd., Suite 140, Cincinnati, Ohio 45249, for appellant, J.B.

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee, Butler County Dept. of Job and Family Services

**PIPER, J.**

{¶ 1}   Appellants, J.B. ("Mother") and her three minor children, J.L.M., J.E.M., and

I.M.M., appeal from the judgment of the Butler County Common Pleas Court, Juvenile

Division, granting permanent custody of the children to the Butler County Department of Job and Family Services ("BCDJFS" or "the agency").[1] For the reasons that follow, we affirm the judgment of the juvenile court.

{¶ 2} In October 2012, BCDJFS received reports that Mother and the children's father had committed acts of domestic violence against each other, were using drugs, and were neglecting their three children: J.L.M. (d.o.b.: 3/27/07), J.E.M. (d.o.b.: 4/9/08), and I.M.M. (d.o.b.: 5/28/09). The agency initiated a voluntary case plan with the parents pursuant to its Alternative Response program that required Mother to complete a substance abuse assessment and follow recommendations, complete the Development of Living Skills (DLS) program, and consistently provide for the children's basic needs and safety. Mother underwent the substance abuse assessment on February 8, 2013 and February 28, 2013. However, on February 28, 2013, she refused to submit to a drug screen. The assessor recommended that Mother engage in Intensive Outpatient ("IOP") treatment for substance abuse.

{¶ 3} On March 2, 2013, the Butler County Sheriff's Office executed a search warrant at Mother's residence and discovered heroin, cocaine, and marijuana in physical proximity to the children. On March 3, 2013, BCDJFS filed a complaint alleging the children to be dependent, neglected, and abused. The children were removed from the home and placed in the temporary custody of an aunt, with the agency having protective supervision.

{¶ 4} As a result of her arrest and the children's removal from her home, Mother's participation in the Alternative Response program was effectively terminated. Mother spent approximately two months in jail as a result of her arrest following the drug bust, and was

---

1. Mother and the children are appealing separately from the juvenile court's judgment, with Mother being represented by one attorney, and the three children being represented, together, by two other attorneys. The children's father defaulted in the permanent custody proceedings in the juvenile court, and is not a party to this appeal.

released at the end of April 2013.  A second case plan was developed requiring Mother to (1) consistently provide for the children's basic and special needs, (2) provide safe and stable housing for the children, (3) learn and demonstrate effective and safe parenting skills, (4) attend and successfully complete the DLS program, and (5) attain and maintain sobriety. The second case plan referred Mother to Community Behavioral Health ("CBH"), which resulted in another recommendation for IOP substance abuse treatment, a referral for a mental health assessment, and a requirement that she follow recommendations arising from the assessment.

{¶ 5}  On April 27, 2013, the children were removed from the temporary custody of the aunt at the aunt's request and placed into the temporary custody of BCDJFS, which then placed the children in foster care.  On May 10, 2013, the children were adjudicated dependent and ordered to remain in the temporary custody of the agency.

{¶ 6}  In June 2013, Mother began IOP treatment.  From June 2013 until December 2013, Mother attended IOP sessions sporadically and tested positive for various substances throughout the time she was engaged in IOP treatment.  As a result, Mother was placed on a "behavior contract."  In December 2013, Mother was considered to have successfully completed the DLS program.  However, in February 2014, Mother tested positive for methamphetamines and opiates.  In March 2014, she tested positive for marijuana.  In June 2014, she tested positive for cocaine, opiates, and oxycodone.  In July 2014, she tested positive for opiates. In December 2014, she again tested positive for opiates. Consequently, Mother was discharged from IOP treatment due to her lack of compliance with program requirements.  On December 30, 2014, CBH reported that Mother refused a drug screen.

{¶ 7}  On January 22, 2015, BCDJFS moved for permanent custody.  Mother was ordered to undergo a second substance abuse assessment, which she completed on February 18, 2015.  As a result of the assessment, Mother was recommended to undergo

residential substance abuse treatment at Sojourner. Mother began the recommended treatment on April 9, 2015. On July 1, 2015, Mother successfully completed residential treatment, and was then referred to engage in the Sojourner IOP substance abuse treatment program, which generally lasts three months. Four days before she completed her residential treatment, Mother filed a motion in the juvenile court requesting that the children be placed in the custody of her father.

{¶ 8} A hearing was held on BCDJFS's permanent custody motion on July 10, 2015 and July 15, 2015. On August 12, 2015, the magistrate determined, by clear and convincing evidence, that: (1) the children had been in the temporary custody of BCDJFS for at least 12 or more months of a consecutive 22-month period, (2) the children could not or should not be placed with their parents within a reasonable time, and (3) granting the agency permanent custody was in the children's best interest. On November 3, 2015, the juvenile court issued a final, appealable order, overruling Mother's and the children's objections to the magistrate's decision.

{¶ 9} Mother appeals from the judgment of the juvenile court and assigns the following as error:

{¶ 10} THE COURT'S DECISION AND ORDER OF PERMANENT CUSTODY AND DENIAL OF LEGAL CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDINGS AND THE EVIDENCE PRESENTED FAILED TO MEET THE REQUISITE CLEAR AND CONVINCING STANDARD.

{¶ 11} The children appeal from the same judgment and assign the following as error:

{¶ 12} THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF THE CHILDREN TO BCDJFS BECAUSE ITS BEST INTEREST ANALYSIS FAILED TO AFFORD EQUAL CONSIDERATION TO EACH OF THE BEST INTEREST FACTORS UNDER

REVISED CODE 2151.414(D)(1), RESULTING IN A DECISION THAT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} We shall discuss Mother's and the children's assignments of error jointly, since they raise the same or similar arguments.

{¶ 14} Before a natural parent's constitutionally protected liberty interest in the care and custody of his or her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). Clear and convincing evidence is that which will produce in the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶ 15} Even if a trial court's judgment is sustained by sufficient evidence, an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence. *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 9. "Weight of the evidence concerns the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis sic.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 330-32, 2012-Ohio-2179, ¶ 12. In considering a challenge to the manifest weight of the evidence, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trial court clearly "lost its way" and created such a "manifest miscarriage of justice" that the judgment must be reversed and a new trial ordered. *In re S.M.* at ¶ 10.

{¶ 16} In weighing the evidence, a reviewing court must be mindful of the presumption in favor of the finder of fact. *Id.* In determining whether the trial court's decision is manifestly against the weight of the evidence, "every reasonable intendment and every reasonable

presumption must be made in favor of the judgment and the finding of facts." *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978). "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id.*

{¶ 17} R.C. 2151.414(B)(1) states that a court may terminate parental rights and grant permanent custody of a child to a children services agency if it finds that (1) the grant of permanent custody to the agency is in the child's best interest, utilizing the factors in R.C. 2151.414(D)(1) and any other relevant factor, and (2) one of the circumstances in R.C. 2151.414(B)(1)(a)-(e) applies, including that the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d).

{¶ 18} R.C. 2151.414(D)(1) provides, in pertinent part, as follows:

> (D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * *, the court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody

of an equivalent agency in another state;

(d)  The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e)  Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 19} After reviewing the record, we find that the juvenile court's grant of permanent custody was proper.  Initially, Mother and the children both acknowledge that the second prong of the two-prong test in R.C. 2151.414(B)(1) for terminating parental rights and granting permanent custody to a children services agency has been established in this case by clear and convincing evidence, since the children have been in the agency's temporary custody for at least 12 months of a consecutive 22-month period.  R.C. 2151.414(B)(1)(d). However, Mother and the children argue the juvenile court erred in finding that the first prong of this test was met, because there was insufficient evidence presented to show clearly and convincingly that it was in the children's best interest to grant the agency permanent custody. Mother and the children also argue the juvenile court's decision to grant the agency permanent custody was against the manifest weight of the evidence.

{¶ 20} The children argue the juvenile court erred in granting BCDJFS permanent custody, because the court "failed to afford equal consideration to each of the best interest factors under [R.C.] 2151.414(D)(1), resulting in a decision that was against the manifest weight of the evidence."  In support of their argument, the children note that in *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, the court stated that a juvenile court must consider the statutory elements listed in R.C. 2151.414(D)(1) as well as other relevant factors in making the best-interest determination required under R.C. 2151.414(B)(1), and there is not one statutory element in R.C. 2151.414(D)(1) that is given greater weight than the others.  The children point out this court has cited this principle from *In re Schaefer* in several of our

cases, including *In the Matter of H.G.,* 12th Dist. Clinton No. CA2014-11-014, 2015-Ohio-1764, ¶ 40. The children contend the juvenile court violated this principle by "focusing almost exclusively on Mother's substance abuse history" and by "fail[ing] to give due weight to the extensive evidence showing [Mother's] progress in treatment, her sobriety, and the consistent, loving bonded relationship she shared with her children."

{¶ 21} In *In re Schaefer,* the Ohio Supreme Court reversed a decision of an appellate court that, in turn, had reversed a decision of a juvenile court that granted permanent custody of a minor child to a county children services agency on the basis that the agency failed to meet its "burden to prove, by clear and convincing [evidence], that termination of appellant's parental rights was not only a necessary option, but also the only option." *Id.* at ¶ 29. In reversing the appellate court's decision, the Ohio Supreme Court began by noting as follows:

> A court must conclude by clear and convincing evidence that an assignment of permanent custody is in the best interest of the child. R.C. 2151.414(E). The court must consider all of the elements in [former] R.C. 2151.414(D) [now 2151.414(D)(1)] as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute. The heightened importance that the appellate court assigned to R.C. 2151.414(D)(4) [now 2151.414(D)(1)(d)] is not required by or even hinted at in the statute, nor is the trial court required to credit evidence in support of maintaining the parental relationship when evidence supporting termination outweighs it clearly and convincingly. The trial court's opinion demonstrates that it considered all the factors required under R.C. 2151.414(D) [now 2151.414(D)(1)].

*Id.* at ¶ 56.[2]

{¶ 22} The Ohio Supreme Court then applied these principles to the case before it, as follows:

> The [juvenile] court satisfied its statutory duty [to consider all

---

2. Since the time *In re Schaefer* was decided in 2006, R.C. 2151.414(D)(1)-(5) has been renumbered and re-lettered, and is now 2151.414(D)(1)(a)-(e). Thus, the best-interest factor regarding the child's need for permanent placement and the ability to achieve such placement without a grant of permanent custody to a children services agency, which was formerly numbered, R.C. 2151.414(D)(4), is now R.C. 2151.414(D)(1)(d).

relevant factors including but not limited to those in former R.C. 2151.414(D)(1)-(5)], now 2151.414(D)(1)(a)-(e)]. That duty did not include the requirement imposed by the appellate court that the juvenile court determine by clear and convincing evidence that "termination of appellant's parental rights was not only a necessary option, but also the only option." Nor did that duty include the requirement that the juvenile court find by clear and convincing evidence that no suitable relative was available for placement. The statute requires a weighing of all the relevant factors, and the trial court did that in this case. R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors.

*Id.* at ¶ 64.

**{¶ 23}** As the children have pointed out, this court has cited the language in *In re Schaefer* that "[t]he court must consider all of the elements in [former] R.C. 2151.414(D) [now, 2151.414(D)(1)] as well as other relevant factors[,]" and "[t]here is not one element that is given greater weight than the others pursuant to the statute[,]" in several cases, including *In the Matter of H.G.*, 2015-Ohio-1764 at ¶ 40. In *In the Matter of H.G.*, this court stated that "[n]o one factor [in R.C. 2151.414(D)(1)] is to be given greater weight or heightened significance in the juvenile court's analysis." While this statement in *In the Matter of H.G.* is correct as far as it goes, we wish to clarify it by pointing out that, while R.C. 2151.414(D)(1) lists the best-interest factors the juvenile court is to consider in making its custody determinations, this provision does not prioritize the factors. The juvenile court must be free to use its discretion to determine the relative weight to be accorded to the factors based on the particular circumstances of the case before it. Otherwise, the question of whether or not permanent custody is in a child's best interest would be determined merely by counting whether more factors are in favor or against granting permanent custody. We now turn to Mother's and the children's arguments with respect to the best-interest factors in R.C.

2151.414(D)(1)(a)-(e).

**{¶ 24}** As to R.C. 2151.414(D)(1)(a), the juvenile court found that "Mother has a bonded relationship with the child[ren]." However, the juvenile court also found that the two oldest children, J.L.M. and J.E.M., "are very strongly bonded to [their] foster mother" and the foster mother has expressed a willingness to adopt them, but the foster mother has not yet "fully committed" to adopting the youngest of the children, I.M.M., due to concerns about his behavior. Nevertheless, the juvenile court found that I.M.M. "is comfortable" with his foster mother, and noted that the children's caseworker testified that the foster mother has not ruled out adopting I.M.M. at this point and that the caseworker expressed his belief that the foster mother "will come around to [adopting I.M.M.] if [the child's] behaviors are successfully addressed."

**{¶ 25}** The children argue the juvenile court improperly suggested they are "more bonded" with their current foster care giver than they are with Mother. This is likely a reference to the juvenile court's stating in its decision that "Mother has a bonded relationship" with the children, and then, shortly thereafter, stating that the two older children are "strongly bonded" with their foster mother. However, we do not read the juvenile court's decision as suggesting that the children are more closely bonded with their current foster caregiver than they are with Mother. The juvenile court clearly found that Mother and the children love one another and are bonded, but that these facts were outweighed by the need to grant the agency permanent custody.

**{¶ 26}** As to R.C. 2151.414(D)(1)(b), the magistrate conducted an in camera interview with the two oldest children, J.L.M. and J.E.M., but the youngest child, I.M.M., declined to be interviewed. Nevertheless, all three children expressed to either the juvenile court directly or to their guardian ad litem that they wished to be reunited with their mother.

**{¶ 27}** The juvenile court took the children's wishes into account, but ultimately

determined that, under the circumstances of this case, the facts that the children are bonded with Mother and wish to be reunified with her are strongly outweighed by the facts that (1) the children's guardian ad litem recommended that BCDJFS be granted permanent custody of the children, (2) the children are very young, and (3) Mother was unable to effectively address her drug addiction and mental health issues and to demonstrate that she can provide for the children's basic needs. These findings are supported by clear and convincing evidence and are not contrary to the manifest weight of the evidence, and therefore, the juvenile court's decision not to accord dispositive weight to the children's wishes in light of the circumstances of this case was supported by clear and convincing evidence and was not contrary to the manifest weight of the evidence.

{¶ 28} As to R.C. 2151.414(D)(1)(c), the magistrate found that, as of the date BCDJFS moved for permanent custody, the children had been in the agency's custody for more than 12 months of a consecutive 22-month period and that, as of the date of the permanent custody hearing, the children had been in the agency's custody for approximately 27 months.

{¶ 29} Mother and the children assert the juvenile court overlooked the fact that the children had been in Mother's custody from the time of their respective births until their removal from Mother's home by the agency in March 2013. However, this fact is heavily outweighed under the circumstances of this case by the fact that, at the time of the permanent custody hearing, the children had been in the custody of someone other than Mother for more than 27 months.

{¶ 30} As to R.C. 2151.414(D)(1)(d), the juvenile court found that all three children are clearly in need of a legally secure placement and that the children's need for such a placement could not be achieved without a grant of permanent custody. Mother and the children contend the juvenile court failed to give appropriate consideration to the progress Mother had made by the time of the permanent custody hearing, and instead, focused almost

exclusively on her "past" struggles with drug addiction. Mother and the children assert the juvenile court erred by severing their relationship where Mother "was doing everything right" by the time of the permanent custody hearing, "was successful in treatment, had attained sobriety, and [was] planning for the future." We find these arguments unpersuasive.

{¶ 31} The record clearly and convincingly shows that Mother did not begin to focus seriously on obtaining treatment for her drug addiction until BCDJFS moved for permanent custody in January 2015. At that time, Mother was ordered to undertake a second substance abuse assessment, which she did, and was then recommended to undergo residential treatment for substance abuse, which she began on April 9, 2015. She completed residential treatment on July 1, 2015 and then signed up for Sojourner's IOP treatment program, which generally lasts about three months. Mother claims that by the time the permanent custody hearing commenced on July 10, 2015, she had "attained sobriety." However, Mother had been undergoing IOP treatment for only eight or nine days before the start of the permanent custody hearing. While there was testimony from one of the children's caseworkers to support the children's contention that relapse is common among people who undergo substance abuse treatment, there is clear and convincing evidence in the record to support the juvenile court's finding that Mother is at high risk of a relapse, since she did so repeatedly throughout 2013 and 2014.

{¶ 32} Mother and the children also contend "[t]here was some indication" at the permanent custody hearing that Mother "was not provided an appropriate level of care until almost two years after the complaint [alleging the children to be dependent, neglected, and abused] was filed." They assert the juvenile court failed "to recognize the extent to which it was outside of Mother's control that she was unable to enter residential treatment early enough in the case for her to be successful within the time constraints necessarily imposed by the [c]ourts."

{¶ 33} The "indication" at the permanent custody hearing that Mother "was not provided an appropriate level of care" that Mother and the children are referring to is an "[i]ndividual [p]rogress [n]ote" from June 16, 2014, prepared by CBH, that states, "Client's [Mother's] [probation officer] * * * reports he staffed [sic] client's case w/his supervisor, who is wanting to see if client can possibly get into residential tx [sic]. Client's [probation officer] reports that he doesn't see client trying to avoid her current environment which leads her to negative behaviors. Reports he is going to try[.]" The probation officer referenced in the note was Mother's probation officer from a felony conviction for which Mother was under probation.

{¶ 34} However, the evidence clearly and convincingly supports the juvenile court's findings that Mother "hindered the process" by not accurately disclosing information and by refusing to undergo a drug screen when she was initially assessed for substance abuse treatment in February 2013 and at several other points during her treatment. Mother's attendance at her IOP treatments throughout 2013 was sporadic, and while Mother appeared to make some progress while undergoing IOP treatments, she was unable to maintain her sobriety throughout most of 2013 and 2014, as she tested positive for illicit substances on numerous occasions during both of those years. Additionally, Mother acknowledged at the permanent custody hearing that she did not desire residential treatment until BCDJFS moved for permanent custody.

{¶ 35} Mother and the children contend the juvenile court "minimized" the fact that their current foster home is their third placement since their removal from Mother, and assert the children's "separation from Mother has been difficult for them and has been detrimental to their security and stability." However, in light of Mother's failure to adequately resolve her drug addiction and mental health issues as well as her inability to attain and maintain stable housing and a stable source of income, granting Mother custody of the children would not

add to the children's security and stability, but instead, detract from it immeasurably.

{¶ 36} Mother and the children, citing this court's decision in *In re G.N.*, 170 Ohio App.3d 76, 2007-Ohio-126, argue the juvenile court failed to adequately consider whether the children's need for a legally secure placement can be achieved without granting BCDJFS permanent custody. In *In re G.N.* at ¶ 40, this court stated that former R.C. 2151.414(D)(4), now 2151.414(D)(1)(d), "requires the [juvenile] court to consider whether granting permanent custody is the only way the children's need for such placement can be achieved." Mother, presumably referring to the language in *In re G.N.* quoted immediately above, contends that *In re G.N.* "dictates that a [j]uvenile [c]ourt must explore any and all reasonable possibilities before dropping the permanent custody hatchet. If there is any other less drastic possibility, such as legal custody to a parent or relative, the [c]ourt must go with that alternative to permanent custody first." The children, citing *in re G.N.*, contend that "[w]hile the best interest factor enumerated in R.C. 2151.414(D)(1)(d) does not control the permanent custody determination, the Twelfth District has emphasized the importance of appropriately weighing this factor."

{¶ 37} However, in stating in *In re G.N.* that R.C. 2151.414(D)(1)(d) "requires the [juvenile] court to consider whether granting permanent custody is the only way the children's need for such placement can be achieved[,]" this court overlooked the language in the Ohio Supreme Court's decision in *In re Schaefer*, 2006-Ohio-5513 at ¶ 64 that stated that a juvenile court's "statutory duty" under former R.C. 2151.414(D) (now 2151.414[D][1]), to consider all relevant factors, including but not limited to those listed in R.C. 2151.414(D)(1)(5) (now 2151.414[D][1][a]-[e]) "did not include the requirement * * * that the juvenile court determine by clear and convincing evidence that 'termination of appellant's parental rights was not only a necessary option, but also the only option.'" Therefore, we now take this opportunity to overrule our statement in *In re G.N.* that R.C. 2151.414(D)(1)(d) requires the

[juvenile] court to consider whether granting permanent custody is the only way the children's need for such placement can be achieved. *See In re M.M.*, 122 Ohio St.3d 541, 2009-Ohio-4048; *In re H.P.*, 12th Dist. Preble No. CA2010-07-010, 2011-Ohio-1148.

{¶ 38} As to the children's contention that this court in *In re G.N.* "emphasized the importance of appropriately weighing this factor[,]" and Mother's contention that *In re G.N.* "dictates that a [j]uvenile [c]ourt must explore any and all reasonable possibilities before dropping the permanent custody hatchet" and "[i]f there is any other less drastic possibility, such as legal custody to a parent or relative, the [c]ourt must go with that alternative to permanent custody first[,]" we note that the Ohio Supreme Court held in *In re Schaefer* that a juvenile court "must consider all of the elements in [former] R.C. 2151.414(D) (now 2151.414[D][1]) as well as other relevant factors[,]" and that "[t]here is not one element that is given greater weight than the others pursuant to the statute." *Id.* at ¶ 56. The court in *Schaefer* further held that giving the best-interest factor in R.C. 2151.414(D)(4) (now 2151.414[D][1][d]) "heightened importance" "is not required by or even hinted at in the statute, nor is the [juvenile] court required to credit evidence in support of maintaining the parental relationship when evidence supporting termination outweighs it clearly and convincingly." *Id.*

{¶ 39} There is no indication that the juvenile court failed to give appropriate consideration to the best-interest factor in R.C. 2151.414(D)(1)(d) in this case, and there is no indication that the juvenile court failed to explore reasonable alternatives before granting the agency permanent custody. Quite simply, there were none. Shortly before the permanent custody hearing, Mother filed a motion requesting that her father be named the children's legal custodian. However, Mother's father failed a home study, and there was no evidence presented as to his relationship with the children. Mother's father did not even attend the permanent custody hearing, and therefore, he never indicated he was willing to

serve as the children's legal custodian. No other relative completed an approved home study, for purposes of being named the children's custodians. Additionally, while Mother suggests that her boyfriend's parents could have been granted custody of the children, this placement would not have resulted in a legally secure placement since, again, Mother and her boyfriend are not married, and the relationship could end without warning, at any time.

{¶ 40} The juvenile court considered and weighed the various best-interest factors in R.C. 2151.414(D)(1)(a)-(e) and resolved them in favor of granting BCDJFS permanent custody. There is clear and convincing evidence to support the juvenile court's decision and the decision is not against the manifest weight of the evidence. Accordingly, Mother's and the children's assignments of errors are overruled.

{¶ 41} Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.