OPINION
{¶ 1} Appellant Tonya Hardy appeals the decision of the Mahoning County Juvenile Court which upheld the magistrate's decision to grant permanent custody of her children to appellee Children's Services Board. The sole issue presented is whether there existed clear and convincing evidence to support the decision to grant permanent custody to CSB. Because the magistrate and juvenile court erroneously stated that the mother abandoned the children, the juvenile court's decision on permanent custody is reversed and this case is remanded for a new hearing.
 STATEMENT OF FACTS {¶ 2} Appellant has six children with the following dates of birth: August 1987, September 1989, March 1991, May 1992, June 1993, and December 1994. The children were adjudicated dependent in 1996 due to allegations of a dirty and unsafe home with no heat or running water and with dangerous holes in the floor. Temporary custody was voluntarily surrendered to CSB in January 1996, and custody was returned to appellant in September 1996.
 {¶ 3} In 2001, the children moved in with their paternal grandmother due to allegations of physical abuse against the two older children. Temporary custody was then officially given to this grandmother in the summer of 2001. However, the grandmother was unable to maintain suitable housing and care for the children, so she relinquished the children over to CSB on September 25, 2001. Thus, her custody was terminated, and a magistrate granted CSB temporary custody of the children in December 2001. No objections were filed, and the trial court adopted the magistrate's decision on temporary custody.
 {¶ 4} Appellant's case plan required her to attend counseling due to mental health issues such as depression, a past suicide attempt, and inappropriate responses to stress. She was to learn non-physical methods for disciplining her children. She was to discontinue dating a certain man. She was to secure her children's basic needs and provide a safe and clean home environment with working utilities.
 {¶ 5} In July 2002, CSB filed a motion to extend temporary custody, stating that in order for reunification to occur, the mother must secure income and her own housing and must consistently attend counseling to deal with stress, anger, and disciplinary issues. On August 23, 2002, the magistrate extended temporary custody and set the case for a February 2003 dispositional review hearing. No objections were filed, and the court adopted the magistrate's decision.
 {¶ 6} On September 5, 2002, CSB filed a motion for permanent custody. The magistrate conducted an in camera hearing with four of the children in June 2003. A final hearing on permanent custody was held before the magistrate on July 22, 2003. CSB stated on the record that it would not seek permanent custody of the two older children but instead would be requesting permission to establish planned permanent living arrangements (formerly known as long-term foster care) for these two children.
 {¶ 7} CSB presented the caseworker's testimony. She reviewed the contents of the case plan. She agreed that appellant completed the parenting course in October 2001. The caseworker disclosed that appellant attended counseling inconsistently. She stated that the most recent session attended was March 2003 but gave no examples of the inconsistency over the years before this. (Tr. 12). The caseworker noted that appellant moved frequently, staying with various friends and family members in deplorable homes. (Tr. 13-14). She opined that appellant's visits with her children did not seem productive and the bond did not seem strong. (Tr. 14). She also opined that it would not be appropriate to place the children with appellant. (Tr. 19). On cross-examination, she conceded that appellant was trying to secure suitable housing, that appellant has not completely disregarded the case plan, that she has witnessed appropriate disciplining, and that appellant loves her children. (Tr. 23-24).
 {¶ 8} Appellant testified on her own behalf. She stated that she started working in November 2002, but got laid off for a few months, and then called back. (Tr. 41). She makes $6.00 an hour with no benefits. She stated that she visits the children every week and that the visits go well. (Tr. 33). She blamed her missed counseling appointments on her lack of transportation and her work. (Tr. 36, 43). She noted that the child endangering charge involved excessive spanking of the two older girls, that one charge was dismissed in exchange for her plea, and that she was only sentenced to non-reporting probation. (Tr. 37, 43). She admitted that she has moved frequently.
 {¶ 9} The magistrate then questioned the guardian ad litem, whose first contact with the children was not until the month before the hearing (at the in camera interview where she asked no questions) and whose first contact with appellant was not until the day before the hearing. She advised that the children's school attendance had greatly improved since their placement and that they have finally attained stability. (Tr. 48, 49). She opined that the children loved each other and their mother. (Tr. 48-49). She admitted that appellant tried to comply with the case plan but recommended sustaining CSB's motion. (Tr. 49, 51).
 {¶ 10} On July 31, 2003, the magistrate granted permanent custody of the four youngest children to CSB and placed the two older children in the temporary custody of CSB for placement in a planned permanent living arrangement. The magistrate stated that it found by clear and convincing evidence that the children cannot or should not be placed with either parent within a reasonable amount of time. In the alternative, the magistrate found that the children were in temporary custody of CSB for more than twelve of the past twenty-two months. The magistrate also determined that living with the mother would be contrary to the children's best interests and that permanent custody would be in the children's best interests. Finally, the magistrate stated that reasonable efforts at reunification were made.
 {¶ 11} More fact specifically, the magistrate found that appellant attended counseling on an inconsistent basis and never completed the program. The magistrate concluded that appellant failed to establish stable housing and frequently moved in with different friends. The magistrate agreed with the caseworker's conclusion that appellant's visits with her children did not seem productive and were not based on a very strong bond. The magistrate also pointed out that appellant pled guilty to child endangering on February 28, 2001 due to allegations of excessive spanking. Further, the magistrate noted that the caseworker testified that the father has not visited or contacted the children in excess of ninety days. However, the magistrate later concluded that both parents abandoned the children as defined by statute.
 {¶ 12} Appellant filed timely objections arguing that permanent custody should not have been granted because she has worked hard on complying with her case plan and she did not abandon her children. On December 23, 2003, after a hearing on the objections, the juvenile court overruled the objections and affirmed the decision of the magistrate, reiterating that the parents abandoned the children. The court ordered the four younger children into permanent custody and the two older children into temporary custody of CSB for placement in a planned permanent living arrangement. Appellant filed timely notice of appeal. This appeal is expedited under App.R. 11.2(D). The briefs were filed in May 2004.
 ASSIGNMENT OF ERROR {¶ 13} Appellant's sole assignment of error provides:
 {¶ 14} "The clear and convincing evidentiary standard required for children services to take permanent custody of any children is supported by the due process clause, thefourteenth amendment to the United States constitution, there is an abuse of discretion when that standard is not met resulting in a constitutional violation."
 {¶ 15} More precisely, appellant is arguing that there was not clear and convincing evidence to support the award of permanent custody, noting a parent's fundamental right to custody of their children. Because she limits her assignment of error to permanent custody, we note that this appeal only relates to the four younger children. Permanent custody of the two older children was not granted to CSB. Rather, as aforementioned, CSB was granted temporary custody of the two older children for placement in a planned permanent living arrangement. A planned permanent living arrangement is said to originate out of legal custody rather than permanent custody, and it does not involve a termination of parental rights. R.C. 2151.011(A)(36)(a). Thus, we move to the analysis of whether the court could properly find clear and convincing evidence to support an order of permanent custody regarding the four younger children.
 {¶ 16} Appellant notes that she was employed, she completed her parenting classes, she visited her children frequently, and she interacted with them lovingly. She emphasizes that she attended counseling and only missed sessions when she had to work or lacked transportation. As for the housing issues, she only states that her frequent moves evidence a desire to find suitable housing and that such housing for six children is hard to afford with a near minimum wage job. She states that the child endangering charge arose from an incident which never recurred and that her punishment was merely non-reporting probation. She notes that she has learned more effective means of disciplining through her parenting class. She disputes the caseworker's opinion that there is not a strong bond between her and her children.
 {¶ 17} As appellant states, due process, and the statute at issue, impose a clear and convincing evidentiary standard. R.C.2151.414(B)(1). Clear and convincing evidence is more than a mere preponderance of the evidence, as is the applicable standard in most civil cases. State v. Schiebel (1990), 55 Ohio St.3d 71,74. Yet, clear and convincing evidence is not as high a burden as beyond a reasonable doubt, the standard applicable to criminal cases. Id. Clear and convincing evidence is that amount of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. Id.
 {¶ 18} We thus examine the record to determine whether the trier of facts had sufficient evidence before it to meet the requisite degree of proof. Id. We are guided by the rule that judgments supported by some competent, credible evidence going to all the essential elements of the case should not be reversed by a reviewing court. Id. at 74-75, citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80; C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280.
 {¶ 19} There are generally said to be two prongs to the permanent custody test that must be determined by clear and convincing evidence: (1) permanent custody is in the best interests of the child; and (2) the child is orphaned or abandoned, the child has been in the temporary custody of CSB for twelve or more months of a consecutive twenty-two month period, or if none of these apply, the child cannot be placed with either parent within a reasonable amount of time or should not be placed with either parent. R.C. 2151.414 (B)(1)(a)-(d).
 {¶ 20} Here, the children were in the temporary custody of CSB for more than the past year. We also note that the magistrate alternatively found that the children could not be placed with either parent within a reasonable amount of time or should not be placed with either parent. There are various instances when a court must find that the children cannot or should not be placed with the parents. R.C. 2151.414 (E)(1)-(16). The court can also choose to make this finding based upon any other reason. R.C.2151.414 (E)(16).
 {¶ 21} In this case, CSB argues that one could reasonably find that the children could not be placed with either parent within a reasonable time because there is no indication that appellant would have stable housing soon, especially considering her recent past housing experiences. Regardless, the children were in the temporary custody of CSB for more than the past year. According to R.C. 2151.414 (B), only one of these factors must be established. Thus, we turn to the remaining prong of the permanent custody test, that of best interests.
 {¶ 22} Before delving into the best interests analysis, we note that permanent custody is an extreme measure. The Ohio Supreme Court has noted a judicial reluctance to grant permanent custody in recognition of the importance of maintaining the family unit and protecting the essential parental rights associated with that unit. In re Cunningham (1979),59 Ohio St.2d 100, 104-105, citing multiple United States Supreme Court cases dealing with the fundamental right to parent one's children. The Court noted that the permanent custody statutes should be liberally construed and interpreted to effectuate the purpose of providing for the care, protection, and mental and physical development of children and that such purpose should be achieved "whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety." Id. at 105, citing R.C.2151.01(A) and (C). The Court also noted that although termination of parental rights should be a last resort, this extreme disposition is still explicitly sanctioned when the child's best interests demand it. Id. at 105.
 {¶ 23} In determining the best interests of the child, R.C.2151.414(D) instructs the court to consider all relevant factors including, but not limited to: the interaction and interrelationship of the child with his family members and others; the child's wishes; the custodial history, including whether the child has been in CSB's temporary custody for twelve or more months of twenty-two consecutive months; the child's need for a legally secure placement and whether this can be accomplished without an award of permanent custody; and thefactors listed in R.C. 2151.414(E)(7) through (11). These factors are as follows: conviction of certain offenses; repeated withholding of medical treatment or food; placing child at substantial risk of harm two times due to alcohol or drugs and rejected treatment; abandonment; or termination of parental rights with regards to a sibling. R.C. 2151.414(E)(7) though (11).
 {¶ 24} We start with the first factor and note that the guardian ad litem testified that the six children love each other and they love their mother. (Tr. 48-49). The caseworker also testified that appellant loves her children and they love her. (Tr. 24). However, she then opined that the visits did not seem productive and the bond did not seem real strong. (Tr. 14). There was no testimony concerning the effect of splitting the siblings up or whether any effort will be made to keep the four youngest siblings together or in contact with each other or their two older siblings.
 {¶ 25} As for the factor dealing with the children's wishes, the magistrate conducted an in camera interview of three of the four children who are the subject of this appeal, and one of the older children, who is not a subject of this appeal. We reviewed this interview, but we shall not divulge its contents at this time.
 {¶ 26} As for the custodial history factor, we have a 1996 removal for a few months due to an unsafe home, a few months spent in the grandmother's home due to the child endangering charges, and then (at the time of the magistrate's hearing) close to two years in temporary custody of CSB.
 {¶ 27} CSB desires the children to have a legally secure placement and believes that this cannot be done without permanent custody and adoption. The mother moves frequently and has been unable to establish independent, stable, or appropriate housing in the two years the children have been in CSB custody.
 {¶ 28} Finally, none of the factors listed in R.C.2151.414(E)(7) through (11) apply to appellant. Although appellant pled guilty to child endangering with regards to an older sibling of the four youngest children, this offense is not one of the serious offenses listed in R.C. 2151.414(E)(7). There are no allegations of repeatedly withholding medical treatment or food. See R.C. 2151.414(E)(8). There are no issues with drugs or alcohol. See R.C. 2151.414(E)(9). There was no termination of parental rights regarding a sibling. See R.C. 2151.414(E)(11).
 {¶ 29} As for the abandonment factor in R.C. 2151.414(E)(10), there is a major problem with the trial court's decision. The magistrate's decision checked a blank stating, "The parents have abandoned subject child/ren as defined by statute." However, the magistrate only found that the father failed to contact or visit the children for more than ninety days.
 {¶ 30} In her objections, appellant urged that there was no evidence that she abandoned her children. The juvenile court responded, "The Subject Children have remained in the temporary custody of the Mahoning County Children Services Board for more than 12 of the past 22 months and that by statute the parents have abandoned the Subject Children as defined by statute."
 {¶ 31} Being in the temporary custody of CSB for twelve months out of a consecutive twenty-two month period is not evidence of abandonment. Rather, it is one alternative in the second prong of the permanent custody test as per R.C.2151.414(B)(1)(d), and it is something to consider when reviewing the children's custodial history as per R.C. 2151.414(D)(3). Abandonment and temporary custody for twelve months are specifically listed as separate and distinct issues in the statute. R.C. 2151.414 (B)(1)(a), (b) and (d).
 {¶ 32} Moreover, contrary to the statement of the juvenile court, the statutory definition of abandonment is set forth in R.C. 2151.011 as follows:
 {¶ 33} "(C) For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."
 {¶ 34} Evidence established that the father abandoned the children; however, no allegations were made and no evidence established that appellant did so. (Tr. 15). Even the state's brief only contends that the father abandoned the children. The juvenile court's judgment entry was based upon failure to completely comply with the case plan and abandonment.
 {¶ 35} Even assuming arguendo we believed there was other evidence supporting the court's decision on the best interests of the children in relation to the mother's failure to fully comply with the case plan, we cannot affirm the juvenile court's decision on permanent custody where the court specifically and erroneously bases its decision on a major factor such as abandonment. There is no evidence of abandonment by the mother in this case, and permanent custody is too drastic of a measure for this court to find such an error harmless.
 {¶ 36} For the foregoing reasons, the judgment of the juvenile court is hereby reversed and this case is remanded for a new hearing.
Donofrio, J., concurs.
DeGenaro, J., concurs.