OPINION *Page 2 
{¶ 1} Appellant Lisa Odey ("the mother") appeals the decision of the Columbiana County Juvenile Court, which terminated her parental rights over her fifteen-year-old daughter and granted permanent custody to the Columbiana County Department of Job and Family Services ("the agency"). Her sole argument on appeal is that there was not clear and convincing evidence to support the court's permanent custody decision. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} The subject child was born in May 1993. She and her older sister were found dependent in Mahoning County in 2001. Legal custody was granted to the maternal grandfather, and the agency was provided protective supervision for a year. Because the grandfather lived in Salem, the case was transferred to Columbiana County.
 {¶ 3} Apparently, the mother had been living in the custodial house on and off. In June 2005, she filed a motion to reallocate custody. A week later, a police officer filed a complaint in this case due to the child's allegation that the mother threw a window screen at her when she was angry and drunk. The mother then withdrew her motion for custody and stipulated to a finding of dependency in September 2005. The child's custody remained with the maternal grandfather, and the agency was to provide protective supervision.
 {¶ 4} On January 26, 2006, the grandfather disclosed that he was no longer able to care for the child due to her alleged unruliness. The court granted an emergency removal that day. The mother stipulated to a finding of dependency, and the court granted legal custody to the child's maternal great-aunt and great-uncle on March 9, 2006. However, they asked the agency to take back the child on June 1, 2006. The child was placed in foster care. The mother stipulated to the requirements of her case plan while the child was in the temporary custody of the agency.
 {¶ 5} The mother's case plan focused in part on her alcoholism and the problems it caused. She submitted to the recommended alcohol counseling and was *Page 3 
released with a "guarded" prognosis. However, she was often seen intoxicated and out of control during the time her child was in foster care. For instance, she would call the child at the foster home in an obviously drunken state so that the child eventually stopped speaking to her over the telephone. During an attempted home visit, the mother yelled and screamed at the caseworker that she had no right to conduct home visits and that she was violating her rights. (Tr. 27). The mother admittedly refused all of the caseworker's attempts at home visits and would not answer telephone calls or respond to letters. (Tr. 21, 31, 80).
 {¶ 6} The mother's case plan required her to attend anger management counseling. She completed an assessment in December 2006 and finished the required twelve group sessions in May 2007, but she never attended the two required individual sessions. (Tr. 19, 68-70). Her case plan also required her to attend a parenting skills course. She completed the course, but it took her twice as long as is typical. (Tr. 63-63). She did permit a counselor to visit her home; however, during the visit, the mother was unfocused on the task at hand due to being upset about the court case. (Tr. 65). The mother offered them a drink but then realized that she only had half of a beer left. The mother claimed later that this was a joke; however, there was an opened can of beer on the counter at 1:30 p.m. notwithstanding that this was a scheduled visit (Tr. 66, 81).
 {¶ 7} Monthly supervised visitation was encouraged. Eventually, the child would not attend without her foster mother and the caseworker sitting on either side of her; so, visitation was stilted. Moreover, the mother's attendance was not consistent or timely. (Tr. 41-46).
 {¶ 8} The case plan required the mother to obtain employment and independent housing with proof of a budget and bill payments for at least six months. However, her employment was sporadic and fleeting, and she never obtained her own residence. She says that she had an apartment for two weeks in the summer of 2007, but she had never informed the caseworker of such. At times, she stayed with a man, with whom her daughter was uncomfortable. (Tr. 21). Other times, she stayed with the child's "psychological father" or other friends. (Tr. 33, 90). On occasion, she stayed at her father's house in Salem. (Tr. 77). When she had money for gas or did *Page 4 
not have to work, she would stay in a trailer that was owned by her father on property on the outskirts of Salem. (Tr. 77, 89-90).
 {¶ 9} In March 2007, the mother failed to appear for a scheduled permanency meeting. Neither the biological father nor the psychological father wanted to take custody of the child. The child voiced that she had no desire to return to or speak with her mother. On May 14, 2007, the agency filed a motion for permanent custody.
 {¶ 10} Despite the fact that the matter was not heard until July 8, 2008, the mother still did not complete the anger management sessions, obtain independent housing or maintain stable employment. Sobriety concerns continued throughout this time. For instance, upon arriving for a supervised visit in July 2007, police had to be called to subdue and arrest the mother who was unruly and intoxicated. (Tr. 28-29, 31). She was also arrested for disorderly conduct and resisting arrest while walking on train tracks in December 2007. (Tr. 93-94). In fact, the caseworker received twenty-two police reports concerning the mother between April of 2005 and May 2008. (Tr. 23).
 {¶ 11} At the dispositional hearing, the aforementioned events were presented in the testimony of the caseworker, the anger management counselor and the parenting skills counselor. Moreover, the guardian ad litem testified that the child, who was fifteen years old, was happy at foster care and wished to stay there. (Tr. 8-9). The child wished to have no contact with her mother, whom she believed was not staying sober. The guardian ad litem opined that permanent custody would be in the child's best interests. Her report noted that the child's grades and behavior have improved since being placed in foster care. The caseworker agreed that permanent custody was in the child's best interests, noting that the child is doing well in school, is busy with activities, is safe and is happy. (Tr. 50).
 {¶ 12} The mother, who was late for the hearing, testified in a disjointed and seemingly defiant manner. She considered her child to have been brainwashed and seemed to believe that the caseworker was out to get her and that the caseworker had no right to visit or call her where she was staying. (Tr. 80, 86). The court interviewed the child in chambers. *Page 5 
 {¶ 13} On July 16, 2008, the trial court found that permanent custody was in the child's best interests and was the only viable prospect for stability. The court stated that the child had been in the temporary custody of the agency for more than twelve months of a consecutive twenty-two month period. The court alternatively found that the mother is not likely to be able to provide for her child by recovering from her alcoholism within a reasonable time. Besides failing in her sobriety goal, the court found that she failed to become economically stable or find suitable housing. The court also stated that the agency made reasonable efforts to reunify. The court found that the child's status had significantly advanced by being placed in foster care and that she has a strong desire to not return to her mother. The court also opined that the mother is emotionally unstable and likely has a significant cognitive impairment, noting that she could not focus or respond to the questions asked of her.
 {¶ 14} The mother filed timely notice of appeal. This case is expedited; however, the mother's brief was not filed until January 5, 2009.
 ASSIGNMENT OF ERROR {¶ 15} Appellant's sole assignment of error provides:
 {¶ 16} "THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE US CONSTITUTION REQUIRES THE DEPARTMENT OF JOB AND FAMILY SERVICES TO PROVIDE CLEAR AND CONVINCING EVIDENCE IN ORDER TO TAKE PERMANENT CUSTODY OF A CHILD AND THERE IS AN ABUSE OF DISCRETION WHEN THAT STANDARD IS NOT MET WHICH RESULTS IN A CONSTITUTIONAL VIOLATION."
 {¶ 17} The agency's burden of proof in seeking permanent custody is clear and convincing evidence. See R.C. 2151.414(B)(1). Clear and convincing evidence is that which produces in the mind of the fact-finder a firm belief or conviction as to the facts sought to be established. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368. An appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the court's judgment. State v. Schiebel (1990), 55 Ohio St.3d 71, 74-75, citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80; C.E.Morris Co. v. Foley Constr. Co. (1978), *Page 6 54 Ohio St.2d 279. This is true even where clear and convincing evidence is the standard. Schiebel, 55 Ohio St.3d at 74.
 {¶ 18} An agency seeking permanent custody must prove that permanent custody is in the best interests of the child and one of the following: (a) the child cannot be placed with either parent within a reasonable amount of time or should not be placed with either parent, (b) the child is orphaned, (c) the child is abandoned, (d) the child has been in the temporary custody of the agency for twelve or more months of a consecutive twenty-two month period. R.C. 2151.414(B)(1)(a)-(d).
 {¶ 19} Here, the court made findings regarding both options (a) and (d). The mother does not dispute that the child was in temporary custody of the agency for at least twelve months of a consecutive twenty-two month period. If (d) exists, then (a) is irrelevant.
 {¶ 20} In any event, the court's findings regarding (a) are supported by the testimony. Neither the biological father nor the psychological father wished to participate in the hearing or assume custody of the child. The mother was uncooperative as to home visits. She did not respond to telephone calls or written communication. Thus, reasonable efforts by the agency were continually thwarted. She also could not keep a job and would not provide verification of her sporadic employment when asked.
 {¶ 21} She could not procure suitable housing for any settled period, let alone the six month period required by the case plan. She stayed with various friends due to the cost of gas from one side of Salem to the other. She did not complete her anger management counseling and would admit only that her daughter was accidentally hit with the window screen. She repeatedly called her daughter while drunk and yelled at her over the telephone. She was found to have continuing sobriety issues; the court even opined that she suffered from emotional instability and cognitive issues. Her testimony contained no hope of transformation.
 {¶ 22} Considering all of the evidence, it was not unreasonable to conclude that the child could not be placed with the mother within a reasonable amount of time or should not be placed with the mother. See R.C. 2151.414(B)(1)(a). See, also, R.C. 2151.414(E)(1) (parent has failed continuously and repeatedly to substantially remedy *Page 7 
the conditions despite reasonable case planning and diligent efforts by the agency); (E)(2) (chronic emotional illness or chemical dependency so severe it makes parent unable to provide adequate home within one year); (E)(16) (any other factor). In any event, as aforementioned, the mother does not have the twelve of twenty-two months finding, which would make this alternative finding irrelevant.
 {¶ 23} The aforementioned facts are also relevant to the court's best interest decision. In determining the best interests of the child, the court is to consider all relevant factors including, but not limited to: the interaction and interrelationship of the child with his family members and others; the child's wishes; the custodial history, including whether the child has been in the state's temporary custody for twelve or more months of twenty-two consecutive months; the child's need for a legally secure placement and whether this can be accomplished without an award of permanent custody. R.C. 2151.414(D).
 {¶ 24} Here, the mother's interaction with the child was drunkenly aggressive prior to involvement and remained this way in telephone calls. The monthly supervised visits did not go smoothly and were often abbreviated due to the mother's untimely arrival and/or early departure. Although only once a month, the mother still missed some visits. The child strongly wished to have the mother's parental rights terminated and was very happy and adjusted in her new life.
 {¶ 25} As for custodial history, the mother claims that she technically lived with the child until the grandfather gave up custody in January 2006; however, it was the grandfather who had legal custody, and testimony established that the mother only occasionally stayed at that house. Thereafter, the grandfather gave up custody, the agency took custody for six weeks, the great aunt and uncle took custody for less than three months, and the agency took custody again. At the time of the hearing, the child had been in the same foster home for over two years. The child was found to have been significantly advantaged by her removal and placement in foster care. Her grades and behavior improved, and she stayed busy with activities. She needed a constant and suitable environment, and the court reasonably concluded that permanent custody was the only viable prospect for such stability. *Page 8 
 {¶ 26} Finally, the mother's testimony was not reassuring in the least. It was rambling and unresponsive at points and argumentative at other points. It can be seen in her past and in her testimony that she focuses on her own desires instead of contemplating the needs of the child. Her refusal of home visits past and future also makes it hard to find that she could have her child's best interests in mind.
 {¶ 27} In view of the background of the case, it was not unreasonable for the trial court to find that the mother's lack of independent housing and her seemingly transient lifestyle are not qualities that accommodate a high school girl's best interests, especially when these were case plan goals and the mother has unresolved alcohol and aggression problems. The trial court reasonably found by clear and convincing evidence that it was in this fifteen-year-old's best interests to have her mother's parental rights terminated under all of the facts and circumstances existing herein.
 {¶ 28} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs. *Page 1