[Cite as *In re T.K.*, 2013-Ohio-5869.]

STATE OF OHIO, HARRISON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| T.K. | ) | CASE NO. 12 HA 4 |
| DOB 6-21-01. | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| A.K. | ) | CASE NO. 12 HA 5 |
| DOB 10-21-04. | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

CHARACTER OF PROCEEDINGS:  Civil Appeal from Harrison County
Common Pleas Court,
Juvenile Division,
Case Nos. 20113010, 20113011.

JUDGMENT:  Reversed and Remanded.

APPEARANCES:
For Appellant:  Attorney Donna Miller
152 North Broadway #200B
New Philadelphia, OH  44663
For Jerome Knight

For Appellee:  Attorney Jeffrey Kiggans
389 16th Street, SW
New Philadelphia, OH  44663
For Harrison County Job &
Family Services

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated:  December 23, 2013

DeGenaro, P.J.

{¶1} Appellant-Father, Jerome Knight, appeals the decision of the Harrison County Court of Common Pleas, Juvenile Division, terminating his parental rights to A.K. and T.K., his minor children. The children's mother did not appeal, having stipulated to the termination of her parental rights. On appeal, Knight first alleges that the juvenile court erred when it allowed him to proceed without counsel for over one year. Second, Knight argues that the juvenile court erred when it found that he had been appropriately served. Finally, he contends the juvenile court's decision to terminate his parental rights is against the manifest weight of the evidence.

{¶2} Knight's arguments are meritorious in part. First, Knight waived any error which occurred through the dependency adjudication and disposition because he failed to appeal that final order. Second, Knight had counsel for the permanent custody hearing and was properly notified of those proceedings. However, HCJFS did not establish by clear and convincing evidence that Knight abandoned his children. Accordingly, the juvenile court's decision as to Knight is reversed, and this cause is remanded for a new trial.

## Facts and Procedural History

{¶3} Dawn Shank, mother, and Jerome Knight, father, had two minor children together, T.K., born on June 21, 2001, and A.K, born on October 21, 2004. On March 24, 2011, the children were taken into custody by Appellee, Harrison County Department of Job and Family Services (HCJFS). The following day HCJFS filed complaints of dependency alleging deplorable home conditions that presented significant risk of harm; that mother engaged in drug use causing her to suffer severe hallucinations; and that mother and stepfather engaged in a pattern of domestic violence in front of the children. Finally, the complaints alleged that Knight was recently released from prison and had very little involvement with the children, not seeing them in over five months.

{¶4} That same day the matter came before the juvenile court for a shelter care hearing in accordance with Juvenile Rule 7. Both mother and Knight appeared and stipulated as to the appropriateness of shelter care. The juvenile court entered denials on behalf of both parents regarding the allegations of dependency. The court further advised the parties that they had a right to separate lawyers and inquired as to whether they

would like counsel appointed to represent them. Both parties stated they would like court appointed attorneys and were asked to fill out the affidavit of indigency before they left. After confirming that neither party had questions about the procedure or their rights, and that both had received a copy of the complaints, the matter was adjourned.

{¶5} On April 14, 2011, the adjudicatory hearing proceeded on the complaints previously filed by HCJFS. Both mother and Knight did not appear. The juvenile court adjudicated T.K. and A.K. to be dependent children, found that reasonable efforts had been made by HCJFS to prevent the removal and determined it was in the best interests of the minor children for the removal to continue.

{¶6} On May 9, 2011, the dispositional hearing was held at which time Knight appeared without counsel. Knight indicated he was ready to proceed and informed the juvenile court that he had the same address, and it had not changed. The court indicated that notices for hearings were being returned as unsigned and he wanted to make sure "everybody's at the right addresses here so notice is perfected." Knight did not indicate to the judge that he had not received the notice of hearing. He further acknowledged that he needed to meet with the caseworkers to be added to the case plan. HCJFS noted that Knight was informed that he could write letters to his children; however, HCJFS had received no letters to date. Knight further stated, "[t]he only thing I request is I would like to get visitation on a regular basis. My understanding that I have to do what I need to do to do that." The juvenile court ordered the children to remain in the temporary custody of HCJFS with the intent of reunification with the parents.

{¶7} On February 23, 2012, HCJFS filed a motion to modify disposition to grant permanent custody to HCJFS alleging the minor children could not be placed with mother or Knight within a reasonable time. Mother's lack of completing her case plan, struggles with drug addiction, sporadic contact with the children, criminal involvement and inability to secure stable housing all contributed to the filing of the motion. Further, the motion stated that Knight had not participated to any degree in the case except attending a hearing early in the proceedings, had no contact with the worker and only wrote one letter to the children.

{¶8} A pretrial on HCJFS's motion to modify disposition was held on March 29, 2012. No transcript was provided, however, the judgment entry indicates that Knight did not appear. No changes were made to any previous orders of visitation and mother was ordered to follow all other aspects of her case plan. Further, a guardian ad litem was appointed for the children.

{¶9} On June 2, 2012, pursuant to Juvenile Rule 16, a notice by publication ran in the Harrison News Herald informing Knight of the June 11, 2012, hearing date to address the custody of the minor children.

{¶10} On June 11, 2012, a review hearing was held and Knight appeared pro-se. HCJFS noted that service had been made upon Knight by publication and he acknowledged receiving notice for this hearing on May 1, 2012. Further, though Knight contended that he returned the paperwork for court appointed counsel, the court found no indication of this within the file. As such, Knight completed the paperwork, was appointed an attorney and the matter was continued as it related to him. Mother stipulated to permanent custody of the minor children being granted to HCJFS and is not a party to this appeal.

{¶11} On July 12, 2012, the juvenile court held a hearing on the permanent custody motion. Knight was present and represented by counsel. The following testimony was presented:

{¶12} Linda Shoppe, social services worker at HCJFS, testified that she was the person at HCJFS primarily responsible for the case concerning T.K. and A.K. which was opened in March of last year. The extent of her contact with Knight was his appearance at two court hearings the previous year, one phone call and one letter to the children. Knight had no court sanctioned visitation during the pendency of the case and Shoppe had concerns that Knight was seeing the children outside of the agency's knowledge. She expressed concerns about Knight's living situation, a one room apartment, and the fact that she smelled alcohol on him at the very first court hearing. This was not the first time these children had been placed out of the home. Shoppe opined that if Knight had worked the case plan then the kids would have been reunited with him, as it is always

best to have the kids with a parent. None of the family placements that HCJFS investigated were successful.

{¶13} On cross examination, Shoppe admitted that she did not know who Knight's employers were and that there were inconsistent accounts as to how often Knight visited with the minor children without the agency's knowledge, though both Knight and the children acknowledge that he was seeing them at some point. She acknowledged that there were no court orders prohibiting Knight from having contact with the children. She indicated she was not aware that Knight had served as the sole care provider for the children in the past and that the children had lived with him since their birth until their mother moved in 2006.

{¶14} Shoppe testified that the children had a temporary placement but were moved from that placement when the foster parent, Mrs. Risher, failed to complete the necessary certification, expressed that she was no longer interested in adopting the children and permitted Knight to see the minor children without approval from HCJFS. She further stated that Knight disclosed to her that he didn't 'step up' because he thought the mother was going to get the children back.

{¶15} On re-direct Shoppe testified she informed Knight in the early stages of HCJFS involvement with the minor children that he would need to write three letters to the children to demonstrate his interest and consistent contact with them. HCJFS only received one letter from Knight.

{¶16} Ms. Seiber, the children's guardian ad litem, testified next. She recommended that the children be placed in the permanent custody of HCJFS. Seiber believed that Knight took no steps toward establishing a stable home, steady job, and drug free life. Knight seemed content to have visitations through the foster care placement. Due to Knight's lack of participation in the case plan, Seiber concluded that Knight was not interested in being a parent, and did not make or have any contact with him as part of her investigation. On cross examination, Seiber admitted that she did not know how long Knight has lived where he is at, how long he has been employed, or where he currently works.

{¶17} HCJFS next called Knight as if on cross examination. He testified that he lived alone in an efficiency apartment located at 139 Fair Avenue Northwest, Apt. 202 C, New Philadelphia, Ohio for the past two and a half years and acknowledged being the father of the minor children; further agreeing with the accuracy of Seiber's testimony. He only sent one letter because he was frequently seeing his children in their foster placement and letters were not 'good enough' for him. He never called the agency to inform them he was seeing the children because seeing them was all that mattered and he was not into the legality of it.

{¶18} Knight estimated seeing the children four to five times since the closing of the first case through the present case. Knight testified that he does landscaping and works as a maintenance man at the apartment building where he lives and that his landlord would give Knight a larger apartment. He has no other children and has not paid towards his current child support order with an approximated arrearage of $8000. Knight believes his kids want to be with him and that he is a good dad. When asked what he had done over the past year to demonstrate his ability as a father, he conceded he did nothing with the case but had seen his kids.

{¶19} On direct testimony, Knight admitted having interactions with the children on a regular basis, that he gets along with them very well, loves them, has a job, and suitable housing for them. The children lived with him from their births until 2006, and for about a year and a half he was the sole care provider for them, able to meet all of their needs. The children remained with him until mother returned from Indiana and took custody back.

{¶20} On July 20, 2012, the juvenile court issued an entry terminating Knight's parental rights finding that reasonable efforts had been made by HCJFS to reunify the children with Knight and that it could not be done. Further, that HCJFS had temporary custody of the children for approximately sixteen out of twenty-two months with absolutely no progress in reunification with Knight. The juvenile court held that Knight had legally abandoned his children for over one year and that the agency established by clear and convincing evidence that Knight abandoned his children and that it was in their best

interest to be placed in the permanent custody of the HCJFS.  Knight appealed.

### Final Appealable Order

{¶21} At the outset HCJFS contends that any arguments regarding the adjudication of dependency and award of temporary custody have been raised in an untimely manner and should not be considered by this court.  In his brief, Knight concedes and agrees with the law regarding the failure to appeal the adjudication of dependency.

{¶22} An appellate court will not consider any error which could have called to the trial court's attention at a time when such error could have been corrected or avoided by the trial court.  *In re I.T.A. and A.A.*, 7th Dist. Nos. 11 BE 27, 11 BE 29, 2012-Ohio-1689, ¶17 citing *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 210, 436 N.E.2d 1001(1982).  Moreover, because it is a final appealable order, an adjudication order of abuse, dependency, or neglect and the award of temporary custody pursuant to R.C. 2151.353(A)(2) must be filed within 30 days of the judgment entry pursuant to App.R. 4(A).  *In re H.F.*, 120 Ohio St.3d. 499, 2008-Ohio-6810, 900 N.E.2d 607, at syllabus.  *In re K.G.*, 7th Dist. No. 09 MA 56, 2009-Ohio-6531, at ¶28.  However, the parent still retains the right to appeal an award of permanent custody to the agency, and that appeal would include issues that arose after the adjudication order.  *In re H.F.,* at ¶17.

{¶23} Knight was present and stipulated to all the facts establishing dependency at the May 2011 dispositional hearing.  Any alleged errors of law surrounding the adjudication and disposition of dependency should have been raised in an appeal filed within thirty days of the May 9, 2011 judgment entry.  They cannot be challenged in this appeal.  As such, review will be limited to any assignments of error that arose after the adjudication of dependency.

### Lack of Counsel

{¶24} In his first of four assignments of error, Knight argues:

{¶25} "The trial court erred by when it allowed Appellant to proceed without counsel for over one year."

{¶26} Juv. R. 4 provides that every party shall have the right to be represented by

counsel and appointed counsel if indigent. R.C. §2151.352 further provides that if a parent appears at a juvenile proceeding without counsel, the juvenile court shall determine whether both parents know they have a right to counsel and the right of a party to be appointed or retain counsel.

**{¶27}** There were three hearings (two reviews and one pre-trial) for which Knight did not appear after the adjudication of dependency. On June 11, 2012, the first hearing on permanent custody, he did appear and asserted that he had previously returned the paperwork to receive court appointed counsel. Contrary to these assertions, the juvenile court was unable to locate this paperwork in the file. Nevertheless, the court had Knight complete the paperwork to determine his indigence. Thereafter, Knight was appointed an attorney and granted a continuance. Further, Knight was represented by said counsel at the hearing on permanent custody on July 12, 2012. On appeal, Knight does not allege his counsel was ineffective.

**{¶28}** The party must appear in the case before the court is obligated to inquire as to whether they need appointed counsel, and an affidavit of indigence must be filed. *In re Nevelos*, 11th Dist. 2007-G-2804, 2008-Ohio-3606, ¶31; *In re Williams,* 10th Dist. No. 03AP-1007, 2004-Ohio-678, 2004 WL 285560, ¶13; and *Matter of Perkins*, 6th Dist. No. L-87-065, 1987 WL 31989, at *2 (Dec. 31, 1987). "[I]f a party appears without counsel, the court shall ascertain whether the party knows of the party's right to counsel and of the party's right to be provided with counsel if the party is an indigent person." R.C. 2151.352, *supra.*

**{¶29}** The first hearing that Knight attended after the adjudication and disposition on the dependency, the juvenile court had him complete the paperwork to determine whether he was indigent and appointed him counsel pursuant to Juv. R. 4 and R.C. §2151.352. Because Knight was represented at the permanent custody hearing by court appointed counsel, his first assignment of error is meritless.

## Proper Service

**{¶30}** In his second of four assignments of error, Knight argues:

**{¶31}** "The trial court erred when it found that Appellant had been appropriately served."

**{¶32}** For proper service, the parent[s] must be notified of the permanent custody motion and the initial permanent custody hearing by one of three methods: personal service; service by certified or registered mail if the parent's whereabouts cannot be discerned after reasonable diligence; or if both those methods fail, by publication. R.C. 2951.29; Juv.R. 16.

**{¶33}** Knight argues that he only received one mailed notice during the entire case. This is directly controverted by Knight's own testimony. At the first permanent custody hearing on June 11, 2012, Knight admitted to receiving notice of service for that very hearing and the last court date which he attended, the disposition hearing on May 9, 2011. His attendance and participation in the final permanent custody hearing on July 12, 2012, demonstrates he received notice of that proceeding as well. Accordingly, Knight's second assignment of error is meritless.

## Manifest Weight

**{¶34}** In his third of four assignments of error, Knight argues:

**{¶35}** "The trial court's decision to terminate Appellant's parental rights is against the manifest weight of the evidence."

**{¶36}** A parent's right to raise his or her children is an essential and basic civil right. *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). However, this right is not absolute. *In re Sims*, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, at ¶23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. *Id*. Nonetheless, permanent termination of parental rights has been described as 'the family law equivalent of the death penalty in a criminal case.' * * * Therefore, parents 'must be afforded every procedural and substantive protection the law allows.' *In re Hayes,* 79 Ohio St.3d 46, 48, 679 N.E.2d 680, quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601

N.E.2d 45 (1991).

**{¶37}** The evidentiary standard in permanent custody cases is clear and convincing evidence. R.C. 2151.414(B)(1). "Slightly less stringent than "proof beyond a reasonable doubt," the clear-and-convincing standard carries the highest burden of proof that can be required in a civil proceeding—defined as more than a mere preponderance of the evidence, clear and convincing evidence is that which is sufficient to establish a firm belief or conviction as to the facts sought to be established." *In re J.W.*, 171 Ohio App.3d 248, 2007-Ohio-2007, 870 N.E.2d 245 (10th Dist.) ¶15, citing *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶38}** As to the standard of review, "[a]n appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination." *In re G.N.,* 170 Ohio App.3d 76, 2007-Ohio-126, 866 N.E.2d 32 (12th Dist.) citing *In re Starkey*, 150 Ohio App.3d 612, 2002-Ohio-6892, 782 N.E.2d 665 ¶16 (7th Dist.). Where a manifest weight challenge is made on appeal, the appellate court looks at "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶12, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "Weight is not a question of mathematics, but depends on its effect in inducing belief." *Id.* This standard of review as set forth in *Thompkins* has been extended to civil cases generally, *Eastley* at ¶17 and cases involving the termination of parental rights. *See In re S. Children*, 5th Dist. No. 2012-CA-00164, 2012-Ohio-6265.

**{¶39}** Before parental rights can be terminated, an agency must prove by clear and convincing evidence that permanent custody is in the best interests of the child and one of the following provisions: "(a) the child cannot be placed with either parent within a reasonable amount of time or should not be placed with either parent, (b) the child is orphaned, (c) the child is abandoned, (d) the child has been in the temporary custody of the agency for twelve or more months of a consecutive twenty-two month period." *In re J.Z.,* 7th Dist. Columbiana No. 08 CO 31, 2009-Ohio-1937, ¶18, citing R.C.

2151.414(B)(1)(a)-(d).

{¶40} HCJFS moved the juvenile court for permanent custody on the basis of R.C. 2151.414(B)(1)(a), that the children could not be placed with either parent within a reasonable time, but the trial court made limited findings pursuant to this provision. Instead, a review of the judgment entries indicate that the juvenile court sua sponte found that the agency established by clear and convincing evidence that Knight abandoned his children. R.C. 2151.011(C), states that "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days."

{¶41} The statute does not differentiate between official visitation and unofficial visitation and all parties recognize that Knight was seeing his children during the pendency of this case. Knight acknowledged he had been seeing the children "frequently." Caseworker Shoppe acknowledged this and further, moved the children from their temporary placement based upon this unsanctioned visitation. The juvenile court's judgment entry further contradicts the finding of abandonment, acknowledging Knight's contact with the children and stating that Knight couldn't have it both ways; either he wanted to see the children and work a case plan or continue to live his own life. Thus, the juvenile court's finding of abandonment was not supported by the weight of the evidence.

{¶42} With respect to the other two statutory provisions pursuant to which an agency can seek permanent custody, the children are not alleged to be orphaned. Although the juvenile court found that they had been in temporary custody for sixteen of twenty-two months on the date the permanent custody motion was heard, the relevant date triggering this provision is the date the motion was filed by the agency. *See In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176 at ¶22-26 (the court cannot use the "12 of 22" provision if the agency files the motion for permanent custody prior to the child actually being in the temporary custody for 12 months). Here, HCJFS's motion was filed prior to the expiration of twelve months. Thus, the 12 of 22 provision is inapplicable and cannot serve as a basis for terminating Knight's parental rights.

{¶43} We must emphasize that termination of parental rights is referred to as "'the family law equivalent of the death penalty in a criminal case.'" *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, at ¶14, quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (1991). As the finding of abandonment was not supported by clear and convincing evidence HCJFS failed to meet its burden regarding permanent custody. "We cannot affirm the juvenile court's decision on permanent custody where the court specifically and erroneously bases its decision on a major factor such as abandonment." *In re Hardy*, 7th Dist. No. 04 MA 11, 2004-Ohio-4542, ¶35. Accordingly, Knight's third assignment of error is meritorious.

{¶44} An agency seeking permanent custody must also prove that permanent custody is in the best interests of the children. But because we have concluded that HCJFS failed to prove that Knight abandoned his minor children pursuant to R.C. 2151.414(B)(1), we decline to address whether or not it is in the children's best interest to award permanent custody to HCJFS. Our favorable resolution of Knight's manifest weight argument renders the issue moot and dispenses with our need to address it, *see generally*, App.R. 12(A)(1)(c), as well as his final assignment of error which alleges: "Plain error occurred when the court allowed Appellant to proceed without counsel."

{¶45} In conclusion, Knight's arguments are meritorious in part. First, Knight waived any error which occurred through the dependency adjudication and disposition because he failed to appeal that final order. Second, Knight had counsel for the permanent custody hearing and was properly notified of those proceedings. However, HCJFS did not establish abandonment by clear and convincing evidence and the trial court's finding of abandonment was error. Accordingly, the judgment of the trial court as to Knight is reversed, and this cause is remanded for a new trial.

Donofrio, J., concurs.

Vukovich, J., concurs.